Argued November 2, suspended one year November 18, 1970

IN RE COMPLAINT AS TO THE CONDUCT OF
## DAN DIBBLE, ACCUSED.
478 P2d 384

*Leo Levenson,* Portland, argued the cause and filed the brief for petitioner.

*John A. Tujo,* Portland, argued the cause for the Oregon State Bar. With him on the briefs was William H. Boland, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, TONGUE, HOWELL and SCHWAB, Justices.

## PER CURIAM.

This is a disciplinary proceeding against a member of the Oregon State Bar, arising from charges as

alleged in two separate complaints and after a hearing on each complaint.

At the first hearing, held on April 23, 1969, evidence was offered that the accused had appeared on three separate occasions in the circuit court in Multnomah county before a judge who testified that, in his opinion, the accused was under the influence of intoxicating liquor on each of these occasions. Evidence was also offered that the accused had been convicted of driving while under the influence of intoxicating liquor, although it was conceded that "this matter has nothing to do with his being a lawyer."

At that hearing the accused admitted the driving conviction, but denied that he was intoxicated at the time of any of the court appearances. He also denied not only that he was an alcoholic, but that he "uses alcohol to excess." He admitted, however, that he was a "problem drinker," but claimed that none of his clients had complained or had suffered in any way as a result; that he was "straightening out," and that he was attending a clinic for problem drinkers recommended by another circuit judge for weekly therapy because he "wanted to be a lawyer." It also appears that the accused had previously been contacted by a member of a Bar Grievance Committee and had been told that he must "seek help."

The accused also offered the testimony of his doctor, who testified that he had been treating the accused for a "hypertensive" condition, with headaches and high blood pressure, for which he had prescribed drugs which could affect the speech and make the eyes bloodshot so as to give the appearance of intoxication. He testified on cross-examination, however, that he had attempted to treat the accused for his drinking

problem; that the accused was an alcoholic, which is a disease; but that many alcoholics are still capable of "going about their regular duties." He also testified that the "primary thing" is for the alcoholic to "want to get well" and that if he then says that he "wants to get it over with," there is "hope"; but that "if he doesn't give a darn, he doesn't get well."

At the conclusion of the first hearing the accused stated that he could "leave it alone if I have to" and would comply with any conditions set by the trial committee other than to go to Dammasch State Hospital "or something like that, or Raleigh Hills," which he said he couldn't afford and "didn't need."

Unfortunately, the accused either did not or could not carry out any such resolution on his part. On January 27, 1970, a supplemental complaint was filed charging him with further appearances in court under the influence of intoxicating liquor. At the hearing on those further charges another circuit judge for Multnomah county testified that on July 16, 1969, the accused appeared in his court in such a condition that the judge was of the opinion that he was under the influence of intoxicating liquor and that his appearance on that occasion was under circumstances which were embarrassing to the court, in view of the presence of other persons in the courtroom. A deputy district attorney also testified to the same condition of the accused on that occasion.

The same judge testified that he had previously talked to the accused about his drinking problem and had told him that he must submit himself to the Oregon Drug and Alcohol Rehabilitation Center for treatment and show evidence that he was "off liquor" if he expected to receive any further state criminal appoint-

ments. Contrary to the testimony of the accused that he had cooperated in that course of treatment, a letter to the judge from the doctor in charge of the treatment center stated that the accused had been drunk at the time of one appearance for treatment; that he was "bitter" and "antagonistic" toward the doctor and would not "participate" in the group therapy, and that "this man is making a travesty of his referral to this clinic."

In addition, a district judge for Multnomah county testified that on December 9, 1969, the accused was late for an appearance to defend a criminal case and that when he arrived in court he had been drinking, in the opinion of the judge. Because of his condition at that time the accused was ordered to appear the next morning to show cause why he should not be held in contempt of court. The judge also testified that the accused was again late and in the same condition at that time and did not seem to comprehend what the judge was telling him.

Again, the accused denied that he had been drinking on these occasions. From the transcript of these court appearances, however, it appears that if he was not under the influence of liquor he was, at the least, so belligerent as to verge upon contempt.

This is a tragic case. The accused is 60 years of age and is a married man. For several years he was chief civil deputy district attorney for Multnomah county. He is an able trial lawyer. But his admitted "drinking problem" is not only one involving his private life and the conduct of his private law practice, but also involves his public appearances as an attorney in the courts of this state.

The personal conduct of an attorney, including the use of intoxicating liquor, may not be a ground for disciplinary action, even when below accepted social standards. But an attorney's appearance in court in an intoxicated condition to represent a client is now generally held to be a ground for disciplinary action against him, at least when such conduct is repeated over a substantial period of time and after warnings of the possible consequences, as in this case. See 17 ALR3d (Anno) 697 and cases cited therein. One obvious reason for such a result is that misconduct by an attorney in open court tends to bring the legal profession and the administration of justice into disrepute and is thus a proper subject for disciplinary action. 17 ALR3d 694.

As held by this court, although under different facts, in *In re Heider*, 217 Or 134, 341 P2d 1107 (1959), at p 159:

"* * * the fact that no one was injured by his conduct was fortuitous only * * *. Embarrassment, injury and discredit were implicit * * *."

This court has also held in *In re Gregg*, 252 Or 174, 446 P2d 123 (1968), again under different facts, at p 177, that the fact that the difficulties of an attorney may have been caused by alcoholic addiction is no defense in a disciplinary proceeding.

The more difficult question is to determine the appropriate penalty. After the first hearing the trial committee recommended that the accused be suspended from the practice of law for a period of two years, but that such a penalty be imposed only in the event that he fail, during a period of five years, to refrain entirely from the use of alcoholic beverages. After the second hearing, however, the trial committee recom-

mended that the accused be suspended for a period of one year and thereafter until he is able to make an affirmative showing that he is again able and qualified to resume the practice of law. The Board of Governors of the Oregon State Bar has approved that recommendation.

We feel considerable compassion for the accused, in recognition of the fact that alcoholism is now generally recognized to be a disease. We cannot, however, disregard our public duty. In addition, the accused has denied that he is an alcoholic. He has also not only refused to accept treatment as an alcoholic, but has failed to cooperate in a clinical course of treatment. Under these facts, it is our opinion that there is no reasonable prospect that either a reprimand or a "suspended suspension," as first proposed by the trial committee, would accomplish anything.

Furthermore, in the absence of a course of intensive treatment as an alcoholic, which the accused has refused to accept and may be unable to afford, we do not believe that in view of the record in this case this court could be reasonably assured that the accused has permanently ended his "drinking problem" in the absence of an affirmative showing that he has refrained entirely from the use of alcoholic beverages for a period of at least one year. Cf. *In re Gregg*, 252 Or 174, at p 181, 448 P2d 547 (1968). Other members of the bar with alcoholic problems have resigned or have been suspended from practice for one or more years and, after making the decision to stop drinking and to seek "help," have been rehabilitated and readmitted to the practice of law. If the accused has the determination that he professes, he may be able to do likewise.

For all of these reasons, we accept and approve the recommendation of the Board of Governors of the

Oregon State Bar and suspend the accused from the practice of law for a period of one year and thereafter until he shall affirmatively show that he is in all respects again able and qualified to resume his position as a member of the bar of this state and that his resumption of the practice of law will not be detrimental to the bar or to the public interest.