Argued and submitted November 5, 1996, accused suspended for one year February 20, petition for reconsideration filed March 12 allowed by opinion March 31, 1998
See 326 Or 622, 956 P2d 951 (1998)

# In re Complaint as to the Conduct of
## WILLIAM B. WYLLIE,
### *Accused.*

## (OSB 93-4, 93-16, 93-17; SC S40929)

952 P2d 550

William B. Wyllie, Salem, argued the cause and filed the briefs *in propria persona*.

Mary A. Cooper, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

Before Gillette, Presiding Justice, and Van Hoomissen, Graber, and Durham, Justices.[*]

PER CURIAM

---

[*] Carson, C. J., and Kulongoski, J., did not participate in the consideration or decision of this case; Fadeley, J., retired January 31, 1998, and did not participate in this decision.

## PER CURIAM

This is a lawyer disciplinary proceeding. The Oregon State Bar (Bar) charged the accused with violating Disciplinary Rule (DR) 1-102(A)(3) (conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 1-102(A)(4) (conduct prejudicial to the administration of justice), DR 1-103(F) (failure to cooperate with the State Lawyers Assistance Committee (SLAC)), DR 2-110(B)(3) (failure to withdraw from a case when mental or physical condition makes effective representation unreasonably difficult), DR 6-101(A) (failure to represent a client competently), and DR 6-101(B) (neglect of a legal matter). A trial panel found that the accused had violated DR 1-102(A)(4) but dismissed the remaining charges. The trial panel suspended the accused for nine months, with six months of the suspension to be stayed pending a two-year probation. The matter comes before us pursuant to ORS 9.536(2) (1995) and Rule of Procedure (BR) 10.1.[1]

On review, the accused argues that he violated none of the charged rules and, therefore, that no sanction is called for. The Bar argues that the accused violated DR 1-102(A)(4), DR 1-103(F), and DR 6-101(A) but no longer asserts that the accused committed the other charged misconduct. The Bar contends that the court should suspend the accused for at least a year. For the reasons that follow, we find that the accused violated DR 1-102(A)(4) and DR 1-103(F),[2] and we suspend him for one year.

## I. FINDINGS OF FACT

We consider this matter *de novo*. ORS 9.536(3); BR 10.6. Any violation of a disciplinary rule must be proved by clear and convincing evidence. BR 5.2.

A. *Failure to Cooperate with the State Lawyers Assistance Committee.*

---

[1] ORS 9.536(2) and BR 10.1 were amended in 1997 to limit mandatory review by the Supreme Court to those cases in which a lawyer is disbarred or suspended from the practice of law for a period of longer than six months. Or Laws 1997, ch 149, § 1; Supreme Court Order No 97-067 (Aug 19, 1997).

[2] Like the trial panel, we find the accused not guilty of violating DR 6-101(A).

The accused is an alcoholic. In 1989, he appeared before a Linn County judge in an intoxicated state, unable to understand the judge's questions in the pending case. Based on the demeanor and appearance of the accused, the judge concluded that the accused was affected by alcohol abuse. Consequently, the judge referred the accused to SLAC.

The accused sought and received some treatment for his alcoholism in 1989 and 1990. He did not complete the treatment, however, and relapsed. On one occasion in 1991, for example, the accused appeared for trial in Marion County in an apparently intoxicated state.

The accused again was referred to SLAC in late 1991 by the State Professional Responsibility Board, which had received several complaints about him. At SLAC's request, Dr. Byrd evaluated the accused. On February 20, 1992, Dr. Byrd reported to SLAC that the accused was a "late-stage" alcoholic who had never received formal treatment. Dr. Byrd recommended that the accused receive intensive in-patient treatment for alcohol dependence and mentioned four treatment centers that could provide appropriate treatment.

On April 21, 1992, a member of SLAC sent the accused a letter informing him that he must choose one of the four listed programs by May 15, 1992, and must be admitted to the selected program by June 1, 1992. On May 6, 1992, the accused responded to that letter. He denied that he had been intoxicated at the times indicated by SLAC, faulted SLAC's investigation, and rejected in-patient treatment because it was too costly and because his prior efforts at in-patient treatment had not worked. The accused disputed Dr. Byrd's conclusion that he was a "late-stage" alcoholic and wrote that "my decision [could] be construed as non-cooperation with the SLAC Committee. I do not believe it is, but if the committee chooses to view it that way, so be it."

On May 12, 1992, the chair of SLAC sent the accused a letter, which said, in part:

"You were referred to SLAC because of indications that your abuse of alcohol is having an adverse impact on your practice and your abilit[y] to represent your clients. Those indications were confirmed in the thorough evaluation by

Dr. Byrd, a highly-respected and qualified expert in addiction medicine. Dr. Byrd's assessment of severe alcohol dependence and continued use is a matter of significant concern to SLAC."

The chair's letter noted that SLAC recognized the financial burden of extended in-patient treatment and stated that SLAC would be willing to develop a less costly alternative if certain conditions were met. SLAC required the accused to give a copy of Dr. Byrd's report to his own physician, Dr. Craig, and then to meet with Dr. Craig and at least one member of SLAC to develop a treatment plan. The meeting was to take place by June 5, 1992, and SLAC as a whole was to consider the sufficiency of any alternative treatment proposal resulting from the meeting. The letter asserted that any failure to cooperate with the outlined course of action would violate DR 1-103(F).

On May 29, 1992, the accused answered that letter. He disputed SLAC's interpretation of Dr. Byrd's assessment. He agreed to see Dr. Craig, but declined to share any information with SLAC, because "[t]his matter has now turned into a disciplinary matter" with respect to the accused's court appearances while allegedly under the influence of intoxicants. On June 22, 1992, the chair of SLAC referred the accused to the Bar for failure to cooperate with SLAC.

We turn to a review of the various incidents that led to the present case.

B. *Court Appearances While Impaired.*

In March 1992, the accused represented a criminal defendant in a Linn County trial. The deputy district attorney assigned to that case smelled alcohol on the accused's breath and noted that some of the accused's comments made no sense. The trial judge decided to reschedule the hearing, because he had reservations about the accused's condition and ability to represent his client effectively. We find that the accused appeared in court on that occasion while under the influence of intoxicants.

On December 21, 1992, the accused represented another criminal defendant in Linn County, on a plea and sentencing. At that proceeding, the accused was shaky, acted

confused, reeked of alcohol, and made inappropriate objections. We find that the accused appeared in court on that occasion while under the influence of intoxicants.

On December 7, 1993, the accused appeared for trial in a criminal case in Marion County. The accused smelled strongly of alcohol, slurred his speech, and acted in a belligerent manner. The trial judge concluded that the accused was under the influence of alcohol and that he was not in a fit condition to try the case that day. The judge rescheduled the case.[3] We find that the accused appeared in court on that occasion while under the influence of intoxicants.

On December 29, 1993, the accused appeared before a different Marion County judge. The clerk advised the judge that the accused smelled of alcohol. The accused also exhibited slurred speech and an argumentative manner. We find that the accused appeared in court on that occasion while under the influence of intoxicants.

On March 13, 1995, the accused appeared in court in Clatsop County. The accused appeared belligerent, his face was flushed, his speech was slurred, and he smelled of alcohol. We find that the accused appeared in court on that occasion while under the influence of intoxicants.

## II.   DISCUSSION OF DISCIPLINARY RULES

We next consider the disciplinary rules to which the foregoing facts relate.

### A.   DR 1-103(F)

1.      DR 1-103(F) provides, in part:

"A lawyer who is the subject of a complaint or referral to the State Lawyers Assistance Committee shall, subject to the exercise of any applicable right or privilege, cooperate with the committee and its designees, including:

"* * * * *

"(4)   Participating in and complying with a remedial program established by the committee or its designees."

---

[3] The judge also held the accused in contempt. That contempt order later was reversed. None of the disciplinary charges that we consider depends on its validity.

The accused failed to cooperate with SLAC by failing to participate in and comply with a remedial program established by the committee. SLAC required the accused to select one of four in-patient treatment programs; he refused, recognizing that his decision could "be construed as non-cooperation with the SLAC Committee." In an effort to develop a substitute remedial program that would be less costly, SLAC required the accused to give a copy of Dr. Byrd's evaluation to the accused's own physician, Dr. Craig, and to set up a meeting among Dr. Craig, the accused, and at least one member of SLAC to draw up an alternative treatment proposal. The accused did none of those things. He thereby failed to cooperate with SLAC.

DR 1-103(F) provides that the required cooperation is "subject to the exercise of any applicable right or privilege." The accused does not argue to this court that any right or privilege applies. We conclude that the accused violated DR 1-103(F).

B. *DR 1-102(A)(4)*

DR 1-102(A)(4) provides:

"It is professional misconduct for a lawyer to:

"\* \* \* \* \*

"(4) Engage in conduct that is prejudicial to the administration of justice."

This court has held that "administration of justice" refers to either the procedural functioning of a judicial matter or the substantive interest of a party. *In re Haws*, 310 Or 741, 747, 801 P2d 818 (1990). To establish that a lawyer's conduct is "prejudicial," the Bar must prove either repeated instances of conduct, each causing some harm, or a single act causing substantial harm. *Id.* at 748.

The accused appeared in court on several occasions while impaired by the use of alcohol. In each case described above, the judge was distracted from the substance of the proceeding by the accused's condition. On at least two occasions the accused's condition resulted directly in the need to delay the proceedings. Additionally, the accused's impaired state during his representation of defendants in criminal

cases created a risk that those defendants would not receive adequate assistance of counsel and that any conviction or plea would be vulnerable to attack on appeal or in post-conviction proceedings, potentially placing additional burdens on the courts.

In summary, the accused engaged in repeated instances of conduct, each of which caused some harm to the procedural functioning of the courts. Accordingly, we conclude that he violated DR 1-102(A)(4).

## III. SANCTION

■ ■ When determining the appropriate sanction, we begin by considering the duty that the lawyer violated, the lawyer's mental state, the potential or actual injury caused by the misconduct, and the existence of any aggravating or mitigating factors. American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards).

When the accused appeared in court while under the influence of intoxicants, thereby interfering with the procedural functioning of the courts, he violated his duty to the legal system. ABA Standard 6.2. When the accused failed to cooperate with SLAC's efforts to ameliorate his condition, he violated his "dut[y] owed as a professional."[4] ABA Standard 7.0 (amended 1992).

When the accused appeared in court while impaired by the use of alcohol, he did so knowingly. In this context, " '[k]nowledge' is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." *Id.* at 7. When the accused failed to cooperate with SLAC, he did so intentionally. " 'Intent' is the conscious objective or purpose to accomplish a particular result." *Ibid.*

---

[4] In *In re Chandler*, 306 Or 422, 432, 760 P2d 243 (1988), this court explained that the purpose of SLAC is to supervise and assist lawyers whose performance or conduct may impair their ability to practice law or their professional competence. The court "deem[ed] the failure to take advantage of this program to be serious because, among other things, it increases the risk to the public and impairs the integrity of the legal profession." *Ibid.*

The court appearances of the accused that form the basis for this proceeding resulted in some actual injury to the functioning of the courts by causing delays and distraction from the substantive issues that were to be tried. The potential for additional injury was even greater. For example, the accused's conduct could have resulted in inadequate representation of clients or in the necessity of retrying cases after successful mistrial motions, appeals, or post-conviction proceedings. The accused's lack of cooperation with SLAC caused injury to that remedial program, by frustrating SLAC's efforts to assist the accused, and injury to the legal system, by failing to prevent the continuation of the accused's other misconduct.

Drawing together the factors of duty, mental state, and injury, but before examining aggravating and mitigating factors, the ABA Standards suggest that suspension is appropriate in the circumstances. *See* ABA Standard 6.22 (lawyer violates court rule and there is interference with legal proceeding); ABA Standard 7.2 (lawyer violates a duty to the profession and causes injury to the public or the legal system).

Three aggravating factors apply to the accused's misconduct: a pattern of misconduct, ABA Standard 9.22(c), manifested by repetition of the same violation; the commission of multiple offenses, ABA Standard 9.22(d), by violating two different kinds of disciplinary rules; and substantial experience in the practice of law, ABA Standard 9.22(i). One mitigating factor applies: the absence of a prior disciplinary record, ABA Standard 9.32(a). The aggravating factors outweigh the mitigating one.

Finally, we consider our prior decisions. The most closely analogous case is *In re Dan Dibble*, 257 Or 120, 478 P2d 384 (1970). There, the accused lawyer had appeared in court several times while intoxicated. 257 Or at 121-23. He refused to cooperate with efforts to offer treatment and, like the accused here, asserted that he neither needed nor could afford in-patient treatment. *Id.* at 125. The court held that the accused's misconduct in open court tended to bring the

legal profession and the administration of justice into disrepute, *id.* at 124, and that a one-year suspension was the appropriate sanction, *id.* at 125-26.

Taking all the relevant factors into account, we likewise conclude that a one-year suspension is the proper sanction in the present case.

The accused is suspended from the practice of law for a period of one year commencing on the effective date of this decision.