Argued and submitted January 16, 1997, accused suspended for 90 days
January 22, 1999

In re Complaint as to the Conduct of

JOHN G. MEYER,
*Accused.*

(OSB 94-196; SC S43286)

970 P2d 652

Mary A. Cooper, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego, argued the cause and filed a brief on behalf of the Oregon State Bar.

John G. Meyer, Astoria, argued the cause and filed a brief *in propria persona*.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Kulongoski, Justices.*

PER CURIAM

---

* Fadeley, J., retired January 31, 1998, and did not participate in this decision; Graber, J., resigned March 31, 1998, and did not participate in this decision.

## PER CURIAM

This is a lawyer disciplinary proceeding. The Oregon State Bar (Bar) charged the accused with violating the Code of Professional Responsibility DR 1-102(A)(4) (engaging in conduct prejudicial to the administration of justice) and DR 7-106(C)(6) (engaging in undignified or discourteous conduct degrading to a tribunal). A trial panel found that the accused violated both those rules and imposed a 90-day suspension. Review in this court is automatic pursuant to *former* BR 10.1 (1997) of the Bar Rules of Procedure.[1] This court has jurisdiction pursuant to ORS 9.536(1), BR 10.1, and BR 10.3. We review *de novo*. ORS 9.536(3); BR 10.6. The Bar has the burden of proving misconduct by clear and convincing evidence. ORS 9.536(2); BR 5.2.

On review, the accused argues that his conduct violated neither of the charged rules. Alternatively, he argues that a 90-day suspension is excessive and therefore inappropriate. Additionally, the accused argues that DR 1-102(A)(4) is unconstitutionally vague and therefore void, and that no sanction can be imposed for violation of that rule.

■ For the reasons that follow, we conclude that the accused violated DR 1-102(A)(4) and DR 7-106(C)(6). We further conclude that DR 1-102(A)(4) is not unconstitutionally vague. Finally, we conclude that the 90-day suspension imposed by the trial panel is appropriate.

We make the following findings of fact. The accused was admitted to the practice of law in Oregon in 1967. On May 9, 1994, he appeared at a Driver and Motor Vehicles Division (DMV) hearing on behalf of a client. At issue was whether the client's driver license should be suspended.

The accused admits that he had several drinks before appearing at the DMV hearing. The other persons present—DMV Hearings Officer Karlene Mills and State

---

[1] *Former* BR 10.1 (1997) provided for automatic review in the Supreme Court where the decision of the trial panel resulted in disbarment or suspension for a period longer than 60 days. BR 10.1 was amended on October 4, 1997, allowing for automatic review where the accused is disbarred or suspended for a period longer than six months.

Trooper James Pierce—testified that the accused smelled of alcohol, acted silly and giggly, made nonsensical remarks, had red, glazed eyes, seemed to have trouble keeping his balance, and threw documents into the air for no apparent reason. Based on the accused's admission and his behavior, we find that the accused appeared on behalf of his client at the DMV hearing while under the influence of intoxicants.

Because of the accused's condition and behavior at the DMV hearing, Hearings Officer Mills became convinced that the accused was in no condition to represent his client. She therefore terminated the hearing and rescheduled it for a later date.

The Bar charged the accused with violations of DR 1-102(A)(4) and DR 7-106(C)(6), based on his conduct at the DMV hearing. The trial panel found that the accused violated both those disciplinary rules.

DR 1-102(A) provides, in part:

"It is professional misconduct for a lawyer to:

"* * * * *

"(4) Engage in conduct that is prejudicial to the administration of justice."

DR 1-102(A)(4) is violated by a single act that is substantially harmful to the administration of justice. *In re Haws*, 310 Or 741, 748, 801 P2d 818 (1990). Harm to the administration of justice can occur when either the substantive rights of a party to the proceeding or the procedural functioning of a case or hearing is impaired. *Id.* at 747. Potential harm to the administration of justice is sufficient to trigger application of DR 1-102(A)(4); the Bar need not prove actual harm. *In re Rex Q. Smith*, 316 Or 55, 59-60, 848 P2d 612 (1993).

The Bar argues that, by appearing at the DMV hearing on behalf of his client while under the influence of intoxicants, the accused committed a single act that was substantially harmful to the administration of justice. We agree. The accused prejudiced the procedural functioning of the DMV hearing process, causing the hearings officer to reschedule the hearing. *See In re Wyllie*, 326 Or 447, 453-54, 952 P2d 550

(1997) (lawyer's repeated appearances in court while under the influence of alcohol each violated DR 1-102(A)(4)). We find the accused guilty of violating DR 1-102(A)(4).

We reject the accused's contention that DR 1-102(A)(4) is unconstitutionally vague. This court has held that the terms of DR 1-102(A)(4) are sufficiently definite to withstand a claim of constitutional vagueness. *Haws*, 310 Or at 746; *In re Rook*, 276 Or 695, 705, 556 P2d 1351 (1976) (interpreting *former* DR 1-102(A)(5)). The accused does not claim that those authorities are distinguishable, nor does he assert that they were not correctly decided.

DR 7-106(C) provides, in part:

"In appearing in the lawyer's professional capacity before a tribunal, a lawyer shall not:

"* * * * *

"(6) Engage in undignified or discourteous conduct which is degrading to a tribunal."

DR 10-101(H) defines "tribunal" as "all courts and other adjudicatory bodies." The DMV hearing was a tribunal, because the hearings officer had authority to adjudicate the charges against the accused's client. She could dismiss those charges, or she could suspend the client's driving privileges for up to three years. The hearings officer also is required to make findings of fact and conclusions of law and to develop the factual record on which any appeal would be based. *See generally* ORS 809.440 (setting out DMV hearing and administrative review procedures).

The accused concedes that his conduct was undignified and discourteous. He denies, however, that his conduct was degrading to the tribunal. We disagree. To "degrade" means to "bring to low esteem or disrepute." *Webster's Third New Int'l Dictionary*, 594 (unabridged ed 1993). The accused's behavior demonstrated a profound disrespect for the tribunal and for the hearings officer, and tended to lower the esteem in which that tribunal is held. *See, e.g., Disciplinary Counsel v. Donnell*, 79 Ohio St 3d 501, 684 NE2d 36, 37-38 (1997) (lawyer who "constantly argued with and interrupted the judge and showed little or no respect for

witnesses" violated analogous Ohio disciplinary rule by engaging in conduct discourteous or degrading to tribunal); *Matter of Goude*, 296 SC 510, 374 SE2d 496, 496 (1988) (lawyer's insulting remarks during sentencing hearing violated analogous South Carolina disciplinary rule). We find that the accused violated DR 7-106(C)(6).

■ Because we find that the accused violated DR 1-102(A)(4) and DR 7-106(C)(6), it is necessary to impose an appropriate sanction. This court refers to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) for guidance in determining the appropriate sanction for lawyer misconduct. *In re Schaffner*, 323 Or 472, 918 P2d 803 (1996). We agree with the statement in the ABA Standards that:

> "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely to discharge their professional duties to clients, the public, the legal system, and the legal profession." ABA Standard 1.1.

In *In re Carstens*, 297 Or 155, 166, 683 P2d 992 (1984), this court stated:

> "Proceedings for the discipline of an attorney are not to punish the attorney for the commission of a crime. That matter is left to the criminal courts. The objects of the proceedings here are to uphold the dignity and respect of the profession, protect the courts, preserve the administration of justice and protect clients."

The ABA Standards establish an analytical framework for determining the appropriate sanction in lawyer disciplinary cases, using three factors: (1) the duty violated; (2) the accused lawyer's mental state; and (3) the actual or potential injury caused by the accused lawyer's misconduct. ABA Standard 3.0. This court examines each of those factors and makes an initial determination of the appropriate sanction. *See* ABA Standards at 5-6 (explaining analytical framework and its application). If mitigating or aggravating circumstances are present, the court considers those as a fourth

factor and determines whether the sanction should be adjusted (*i.e.*, increased or decreased). *Id.* at 6; ABA Standard 3.0. In determining the correct sanction, the court also examines the conduct of the accused in light of the court's prior case law. *In re Garvey*, 325 Or 34, 44, 932 P2d 549 (1997).

The accused violated his duty to avoid conduct that reflects adversely on the lawyer's fitness to practice law. ABA Standard 5.14. The accused also violated his duty to the legal system to avoid conduct which creates interference or potential interference with a legal proceeding. ABA Standard 6.22. We conclude that the accused acted "knowingly," defined as a conscious awareness of the nature or attendant circumstances of the conduct, but without a conscious objective or purpose to accomplish a particular result. ABA Standards at 7. In this case, the accused's behavior caused actual injury: the DMV hearings officer was forced to reschedule the hearing, and the state's witness was required to make himself available a second time.

ABA Standards 5.14 and 6.22, respectively, provide:

"Admonition is generally appropriate when a lawyer engages in * * * conduct that reflects adversely on the lawyer's fitness to practice law."

"Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding."

Drawing together the factors of duty violated, the accused's mental state, and the actual injury caused, we conclude, initially, that suspension is an appropriate sanction in this case. We now turn to examination of aggravating and mitigating circumstances.

Several aggravating factors are present here. First, the accused has committed a prior disciplinary offense. ABA Standard 9.22(a). The "prior offenses" aggravating factor "refers to offenses that have been adjudicated prior to imposition of the sanction in the current case." *In re Jones*, 326 Or 195, 200, 951 P2d 149 (1997). When applying that factor to a particular case, the following considerations, at a minimum,

play an important role in the court's analysis: (1) the relative seriousness of the prior offense and resulting sanction; (2) the similarity of the prior offense to the offense in the case at bar; (3) the number of prior offenses; (4) the relative recency of the prior offense; and (5) the timing of the current offense in relation to the prior offense and resulting sanction, specifically, whether the accused lawyer had been sanctioned for the prior offense before engaging in the offense in the case at bar. *Id.* These considerations can heighten or diminish the significance of the earlier misconduct. *Id.*

In 1990, the accused was publicly reprimanded for neglecting a legal matter and improperly withdrawing from representation of a client. That public reprimand was imposed before the accused engaged in the misconduct at issue here. That 1990 reprimand demonstrates that the accused had "both warning and knowledge of the disciplinary process." *In re Hereford*, 306 Or 69, 75, 756 P2d 30 (1988) (internal quotation marks omitted).

This case presents additional aggravating factors. The accused refused to acknowledge the wrongful nature of his conduct, ABA Standard 9.22(g), and the accused has substantial experience in the practice of law, ABA Standard 9.22(i).

The accused presents no mitigating factors, and we find none. We now turn to consideration of this court's prior case law.

There are two cases that are closely analogous to this one. The most recent is *In re Wyllie*. In that case, the accused lawyer appeared in court while intoxicated on several occasions. On two of those occasions, the accused's intoxicated state resulted in delay of the proceedings. 326 Or at 453. For that conduct, and for violating DR 1-103(F) (failure to cooperate with remedial program), the accused was suspended for one year. *Id.* at 456. In *In re Dan Dibble*, 257 Or 120, 121-23, 478 P2d 384 (1970), the accused lawyer appeared in court while intoxicated on several occasions. The court found that that misconduct tended to bring the legal profession and the administration of justice into disrepute, and suspended the accused for one year. *Id.* at 124, 126. We note that the accused in this case did not make multiple

appearances before a tribunal while under the influence of intoxicants. This case is therefore distinguishable from both *Wyllie* and *Dibble*.

Taking all the relevant factors into consideration, we conclude that a 90-day suspension is appropriate.

The accused is suspended from the practice of law for a period of 90 days, commencing 60 days from the date of this decision.