No. 36 August 15, 2013 47

IN THE SUPREME COURT OF THE
STATE OF OREGON

In re Complaint as to the Conduct of
PETER CARINI,
*Accused*.
(OSB 10125; SC S060708)

En Banc

On review from a decision of a trial panel of the Disciplinary Board.

Argued and submitted April 30, 2013.

Lee S. Werdell, Bend, argued the cause and filed the briefs for the accused.

Stacy J. Hankin, Assistant Disciplinary Counsel, Tigard, argued the cause and filed the brief for the Oregon State Bar.

PER CURIAM

The accused is suspended from the practice of law for 30 days, commencing 60 days from the date of filing of this decision.

## PER CURIAM

In this attorney discipline proceeding, the Bar charged the accused with violating Rule of Professional Conduct (RPC) 8.4(a)(4), which prohibits engaging in conduct that is prejudicial to the administration of justice.[1] The trial panel determined that the accused had violated that rule, and it recommended his suspension from the practice of law for 30 days. On review, the accused challenges the trial panel's determinations regarding the rule violation and sanction. On *de novo* review, we find that the accused violated RPC 8.4(a)(4), and we further conclude that a 30-day suspension is the appropriate sanction.

## I.   FACTUAL BACKGROUND

This proceeding arose out of the accused's failures to appear in court for scheduled hearings in the course of representing four different clients. The accused is a criminal defense attorney, and all four of his clients in the proceedings at issue here were defendants facing pending criminal charges before the Josephine County Circuit Court. We find the following facts by clear and convincing evidence.

## A.   *The Gales and Lockwood Matters*

The accused represented Gales in a criminal proceeding; the case was set for a docket call on April 21, 2010. The accused also represented Lockwood in a criminal proceeding that was set for docket call the same day. The accused had received notice of the docket calls in each case in February 2010, and the appearances were entered on his calendar.

At docket call, which occurs on the Wednesday before the week that a case is scheduled for trial, the parties report whether they are ready for trial the following week. Information obtained at docket call allows the court to efficiently and accurately determine which of the trials that are scheduled for the following week will actually be tried

---

[1] RPC 8.4(a)(4) provides:

"(a)  It is professional misconduct for a lawyer to:

"*****

"(4)  engage in conduct that is prejudicial to the administration of justice[.]"

and which will be reset, either on motion or because there are insufficient judges available. Pursuant to a Josephine County Circuit Court local rule, attorneys are required to appear for a docket call either in person or, if prior arrangements are made, by telephone. The mandatory appearance rule allows the court to simultaneously obtain all the information that it needs from the parties and communicate the trial schedule to the parties in an orderly and efficient manner.

The accused did not appear for docket call on April 21 in either the Gales or Lockwood cases. His clients did not appear either. As a consequence, the court issued arrest warrants for both Gales and Lockwood. The court telephoned the accused later in the day on April 21 to inquire why he had not appeared. The accused replied that he had had a trial in another county, that he had forgotten to call the court, and that he had forgotten to give the court a call back number.

Presiding Judge Wolke instructed the accused to send a letter to the court explaining why he had not been present at the docket call. The accused did so, stating that it was his office policy for a staff member to arrange for a telephone appearance for docket calls and that he thought that such an arrangement had been made for the April 21 docket calls. However, an employee of the accused, Byrnes, testified before the trial panel that the court's "general policy" was for the accused to appear in person unless specific arrangements had been made for a telephone appearance. According to Byrnes, if a telephone appearance had been arranged, a notation to that effect would have been placed on the accused's office calendar. No such notation had been made for the April 21 docket call appearances.

B. *The Burton Matter*

The accused represented Burton in a criminal proceeding that was set for a docket call on June 9, 2010, with trial to follow on June 17. Pursuant to the court's local rules, the accused made prior arrangements to appear by telephone at the docket call. At the appointed time, the court called the accused at the number that he had provided. However, the accused did not answer; instead, the voicemail message gave another number to call. The court called that second number, and no one answered. The accused had begun having

trouble with his office phone system in March 2010. The accused knew of the problems with the phone system, but he failed to take steps to ensure that the court could reach him for the docket call on June 9.

Burton did not appear at the docket call, nor did either the accused or Burton appear for trial on June 17. At that point, the court issued a warrant for Burton's arrest. On August 5, the court held a further hearing at the accused's request to resolve the outstanding arrest warrant. Both the accused and Burton appeared at the August 5 hearing, and the court recalled the arrest warrant.

C. *The Westfall Matter*

The accused represented Westfall in a criminal proceeding. A status hearing was set for May 17, 2010, at 1:30 p.m. At a status hearing, the parties report whether any discovery issues exist in a case and whether the case will be resolved with a plea or should be set for trial. The status hearing is an important scheduling tool for the court, because 70 to 80 percent of the cases are resolved with a plea at status hearings. The results of those hearings allow the court to focus its limited time and resources on those cases that will be tried.

The accused received notice of the status hearing and set the matter on his calendar. The accused called the court at 1:27 p.m. on May 17 and advised that he would be late because he had a court appearance in a different county. The court deferred considering the Westfall matter until 2:45 p.m. Because neither the accused nor Westfall had arrived by then, the court issued a warrant for Westfall's arrest. The accused arrived at the Josephine County courthouse at about 3:15 p.m., after the court had recessed.

On May 28, the court held another status hearing in the Westfall case at the accused's request. Both the accused and Westfall appeared at that hearing, and the court recalled the warrant for Westfall's arrest.

D.  *The Trial Panel Decision*

On October 28, 2010, the Bar filed a formal complaint charging the accused with having violated RPC 8.4(a)(4) by missing the three docket calls and the status hearing. A trial panel was appointed, and the matter was heard on October 4, 2011, and May 17, 2012. The trial panel issued an opinion that included the following findings:

> "The accused's actions in all four cases violated his duty to the legal process and his profession and the duty to protect his clients by failing to abide by court rules. His conduct was prejudicial to the administration of justice in the following particulars:

> "He wasted court and staff time in having to deal with his inability to be prompt either in person or by phone for these various court matters. The court is short handed and does not have the time to deal with the accused and his failure to appear for court hearings. In addition, warrants had to be issued for all four cases.

> "* * *[T]he accused knew the phone system was failing and took no action (until the system was replaced) to ensure his appearances in court. His conduct in the cases [came] after he had previously been disciplined in *Carini I* for a similar violation. He was given a 30-day suspension which was suspended provided he completed certain conditions. The accused was on notice that his failure to follow the court rules in the future would not be tolerated.

> "The trial panel finds that the Josephine County Circuit Court has just and actual injuries in the form of additional work, additional staff and additional court time dealing with the accused's failure to appear. Westfall potentially could have been injured as the court issued a warrant for his arrest for failure to appear. Nothing came of it as Westfall accepted a plea deal the day after the warrant was issued."

With regard to the proper sanction, the trial panel found, as an aggravating factor, that the accused had a prior disciplinary offense. That offense was based on a February 2010 decision by a Disciplinary Board trial panel that the

accused had violated RPC 3.4(C)[2] and RPC 8.4(a)(4) when, for an extended period in late 2007, in violation of a court rule, he did not resolve known trial scheduling conflicts, resulting in his failure to appear for trial in Josephine County Circuit Court. (*Carini I*). When the accused did not appear for trial, the court was forced to dismiss a jury called to hear the case. The trial panel in that proceeding also found that the accused had violated a different rule, RPC 1.4(a),[3] in connection with his representation of another client. The trial panel imposed a 30-day suspension, but stayed the suspension pending 90 days' probation. During that probationary period, the accused was required to adopt measures to avoid the type of scheduling conflicts that had caused the violations at issue. The probationary period in *Carini I* began on April 24, 2010, and ended on July 23, 2010. The conduct at issue in this proceeding occurred either just before or during the 90-day probationary period in *Carini I*.[4]

The trial panel in this proceeding also found that the accused had substantial experience in the practice of law, and had not "demonstrate[d] any appreciable appreciation as to the effects of his actions, or lack of action, has had on the court or much less on his clients." In mitigation, the panel found that the accused had not acted dishonestly and had cooperated during the disciplinary process. After considering those aggravating and mitigating factors, the trial panel recommended that the accused be suspended from the practice of law for 30 days.

## II.   THE PARTIES' CONTENTIONS

On review, the accused first contends that the Bar failed to prove that his conduct resulted in "substantial

---

[2]  RPC 3.4(c) provides:

"A lawyer shall not:

"* * * * *

"(c)  knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists[.]"

[3]  RPC 1.4(a) provides:

"(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information[.]"

[4]  Neither the accused nor the Bar appealed the trial panel's decision in *Carini I* to this court.

harm," which, he asserts, is necessary to establish that his conduct prejudiced the administration of justice in violation of RPC 8.4(a)(4). According to the accused, the issuance of an arrest warrant is "simply a matter of a clerk pushing a button which causes the warrant to be printed," and therefore, his failures to appear did not substantially increase the amount of time or effort that court staff had to expend. Moreover, the accused asserts, because his clients failed to appear at their respective court proceedings, and he had no control over their choices in that regard, the court would have issued the arrest warrants anyway, and thus, his own failure to appear had no additional impact on court operations. The accused reasons that the time that the court spent calling him to determine whether he would appear was insignificant and that "all activities of the judge and his clerk were accomplished in the normal course of their work during regular work hours." In all, the accused opines, the court likely expended no more than 15 minutes as a result of his failures to appear. The accused relies on this court's decision in *In re Lawrence*, 350 Or 480, 256 P3d 1070 (2011), for the proposition that time and effort that a court spends communicating with an attorney concerning the attorney's conduct cannot "serve as the basis for a finding of substantial harm in violation of [RPC 8.4(a)(4)]."

Second, the accused asserts that the Bar impermissibly based the charge in this case on his aggregated conduct in representing four different clients. The accused argues that permitting the Bar to combine, in a single charge based on RPC 8.4(a)(4), instances of conduct involving multiple client representations would expose "almost every lawyer who has practiced over a lengthy period of time" to prosecution under that rule. Accordingly, the accused urges this court to conclude that a charge under RPC 8.4(a)(4) must be limited to conduct occurring within the course of a single representation of a single client.

Finally, the accused asserts that, to violate RPC 8.4(a)(4), an attorney must *intentionally* engage in conduct that is prejudicial to the administration of justice. The accused asserts that no evidence in the record shows that he intended to miss his court appearances. The accused

asserts that we noted, but did not decide, that issue in *In re Claussen*, 322 Or 466, 909 P2d 862 (1996).[5]

The Bar replies that the accused repeatedly violated court rules in ways that were prejudicial to the administration of justice because, "when a lawyer does not appear for a docket call or a scheduling conference, then the court must take additional steps to contact the lawyer in order to obtain the information it needs to manage the docket. Issuing warrants also requires staff and judicial time." The Bar further asserts that the accused's failures to appear created the potential for harm to his clients, who were exposed to the risks of arrest and unrepresented court appearances.

With regard to the accused's second argument, the Bar contends that the text of RPC 8.4(a)(4) does not prohibit the aggregation of conduct involving multiple client representations in a single charge for violating that rule. Finally, the Bar asserts that RPC 8.4(a)(4) does not include a mental state requirement, relying on this court's statement in *Claussen*, 322 Or at 482, that the rule "focuses on the effect a lawyer's conduct has on the administration of justice, rather than on the lawyer's state of mind when the conduct is undertaken."

### III.  ANALYSIS

With the parties' arguments so framed, we return to the text of RPC 8.4(a)(4). As noted, that rule provides:

"(a)   It is professional misconduct for a lawyer to:

"* * * * *

"(4)   engage in conduct that is prejudicial to the administration of justice[.]"

To establish a violation of RPC 8.4(a)(4), the Bar must prove that (1) the accused lawyer's action or inaction was improper; (2) the accused lawyer's conduct occurred during the course

---

[5] The accused also raises several challenges to RPC 8.4(a)(4) under the state and federal constitutions.  Among other arguments, the accused asserts that RPC 8.4(a)(4) is "void for vagueness." The accused acknowledges that we rejected a similar argument in *In Re Rook*, 276 Or 695, 556 P2d 1351 (1976), but he asks that we overrule the decision in that case.  We decline to do so.  Accordingly, we reject the accused's argument that RPC 8.4(a)(4) is "void for vagueness," and we reject his remaining constitutional challenges without discussion.

of a judicial proceeding; and (3) the accused lawyer's conduct did or could have had a prejudicial effect upon the administration of justice. *See* [In re Kluge](#), 335 Or 326, 345, 66 P3d 492 (2003) (so stating for identically worded *former* DR 1-102(A)(4)). There are two pertinent aspects to the "administration" of justice: "1) The procedural functioning of the proceeding; and 2) the substantive interest of a party in the proceeding." *In re Haws*, 310 Or 741, 747, 801 P2d 818 (1990). "A lawyer's conduct could have a prejudicial effect on either component or both." *Id*. To prove prejudice to the administration of justice, the Bar must show that an attorney's conduct:

> "[H]armed [or had the potential to harm] the procedural functioning of the judicial system, either by disrupting or improperly influencing the court's decision-making process or by creating unnecessary work or imposing a substantial burden on the court or the opposing party."

*Lawrence*, 350 Or at 487. Finally, prejudice to the administration of justice "may arise from several acts that cause some harm or a single act that causes substantial harm to the administration of justice." *Kluge*, 335 Or at 345.

With that understanding, we turn to the accused's argument that the Bar failed to prove that his conduct prejudiced the administration of justice. Here, the accused failed on four occasions to appear for scheduled court hearings. Under *Kluge*, the question is not whether each of those acts caused "substantial harm," but rather whether, taken as a whole, those acts caused "some harm." We conclude that the accused's conduct caused some harm to the administration of justice in the Josephine County Circuit Court. The accused's multiple absences required court staff to attempt to locate him, required the court to issue arrest warrants for his clients after those clients failed to appear for their scheduled hearings, and required the court to schedule and conduct additional hearings. We reject the accused's characterization of those efforts as minimal or merely a matter of routine. The repeated nature of the accused's conduct distinguishes this case from *Lawrence*, where the issue was whether a single act by an attorney had caused "substantial harm" to the procedural functioning of

the judicial system. *See* 350 Or at 488-89 (accused did not cause substantial harm by causing judge to call accused to chambers to discuss judge's "concern" about accused's release of hearing transcript).

Our conclusion is not undermined by the fact that the accused's clients also failed to appear for the scheduled hearings. The presiding judge testified before the trial panel that, when an attorney appears at docket call but his or her client fails to appear, the court generally provides the attorney with an opportunity to produce the client before a warrant is issued or, alternatively, to give an explanation for the client's absence. In some circumstances, the explanation provided by the attorney can obviate the need for issuance of an arrest warrant. The accused's failure to appear deprived the court of that possible benefit and, as explained above, required the court to expend additional time and resources. Similarly, despite their own failures to appear, the accused's clients would have benefitted from the accused's presence at the hearings to provide the court with some information, however minimal, regarding the status of their cases.

We turn to the accused's second argument that the Bar improperly aggregated, in a single charge, conduct that occurred in the course of multiple client representations. That argument also is unpersuasive. As discussed, RPC 8.4(a)(4) prohibits an attorney from engaging "in conduct" that is prejudicial to the administration of justice. Nothing in the text of the rule limits the scope of its prohibition to conduct occurring in the course of a single representation, and we discern no logical support for such a limitation. In *In re Wyllie*, 326 Or 447, 952 P2d 550 (1998), this court considered, in determining that the accused had violated *former* DR 1-102(a)(4), five instances where the accused had appeared for court proceedings while intoxicated. Those instances occurred over a three-year period. As we explained:

> "The accused appeared in court on several occasions while impaired by the use of alcohol. In each case described above, the judge was distracted from the substance of the proceeding by the accused's condition. On at least two occasions the accused's condition resulted directly in the need to delay the proceedings. Additionally, the accused's

impaired state during his representation of defendants in criminal cases created a risk that those defendants would not receive adequate assistance of counsel and that any conviction or plea would be vulnerable to attack on appeal or in post-conviction proceedings, potentially placing additional burdens on the courts.

"In summary, the accused engaged in repeated instances of conduct, each of which caused some harm to the procedural functioning of the courts. Accordingly, we conclude that he violated DR 1-102(A)(4)."

*Id.* at 453-54. Because the accused's proposed limitation lacks support in the text of the rule and is inconsistent with our previous application of it, we reject his second argument without further discussion.

Finally, we turn to the accused's argument that the Bar was required to prove that he intended to miss court appearances in order to establish a violation of RPC 8.4(a)(4) and that it failed to do so. As noted, the Bar counters that, because RPC 8.4(a)(4) does not contain an express mental state requirement, it was not necessary to prove that the accused acted with a culpable mental state. As an initial matter, we decline the accused's invitation to read into the rule an intent element that does not appear in its text. *See Claussen*, 322 Or at 482 (implicitly rejecting a similar argument that predecessor rule, *former* DR 1–102(A)(4), required proof of intent and stating that "[t]he focus of the rule is on the effect of a lawyer's conduct on the administration of justice, rather than on the lawyer's state of mind when the conduct is undertaken"); *see also In re Marandas*, 351 Or 521, 536, 270 P3d 231 (2012) (same); *In re Stauffer,* 327 Or 44, 59, 956 P2d 967 (1998) (stating that *former* DR 1–102(A)(4) "focuses on the effect of the lawyer's conduct, not on the lawyer's intent.").

However, that conclusion does not require us to embrace the Bar's assertion that RPC 8.4(a)(4) amounts to a strict liability rule. That is, to say, consistent with the approach we have taken in *Claussen* and other cases, that the focus of the rule is on the effect of conduct, not the accused's state of mind when the conduct is undertaken, does not necessarily compel the conclusion that the rule authorizes

discipline for *faultless* conduct. In other words, this court was not required in *Claussen* or any subsequent case to decide whether an accused must have a culpable mental state with respect to engaging in the charged conduct itself, apart from the effect of such conduct on the administration of justice.

It is not necessary to resolve that issue in this case, because (1) the accused does not assert that any particular culpable mental state other than intent is necessary to establish a violation of the rule; and (2) from the facts in the record before us, we find that the accused at least acted negligently—and did so repeatedly—in failing to appear for the docket calls and status conference.[6] In the Gales and Lockwood matters, the accused admitted that he had forgotten to contact the court, and he also admitted that he had forgotten to provide the court with a number at which to contact him. In addition, the accused knew that his office's phone system was not functioning properly, thereby depriving the court of an effective means of contacting him by phone and contributing to his failure to appear in the Burton case. Finally, the accused negligently failed to make arrangements to avoid the scheduling conflict between two court appearances that led to his failure to timely appear in the Westfall case. Because clear and convincing evidence in the record establishes that the accused repeatedly—and at least negligently—failed to appear, we need not decide whether the absence of an express mental state requirement in the text of RPC 8.4(a)(4) has the effect of imposing "strict liability" for conduct that violates that rule. The Bar proved by clear and convincing evidence that the accused engaged

---

[6] We note that, in construing similarly worded rules of professional conduct, courts in other jurisdictions have held that a violation may occur when an attorney *negligently* engages in conduct that is prejudicial to the administration of justice. *See*, *e.g.*, *In re Clark*, 207 Ariz 414, 418, 87 P3d 827, 831 (2004) (concluding that accused lawyer's negligent conduct constituted conduct prejudicial to the administration of justice); *Fink v. Neal*, 328 Ark 646, 655, 945 SW2d 916, 921 (1997) (concluding that accused lawyer was subject to discipline for negligently engaging in conduct prejudicial to the administration of justice); *People v. Mills*, 861 P2d 708, 711 (Colo 1993) (finding conduct prejudicial to the administration of justice when accused lawyer, whether intentionally or negligently, improperly asserted a lien on his client's estate proceeds); *Florida Bar v. McClure*, 575 So 2d 176, 178 (Fla 1991) (finding conduct prejudicial to the administration of justice when accused lawyer, whether intentionally or negligently, mismanaged funds to the detriment of estate beneficiaries).

in conduct that is prejudicial to the administration of justice. *See* RPC 8.4(a)(4).

## IV.   SANCTION

Having determined that the accused violated RPC 8.4(a)(4), we turn to the appropriate sanction. We first consider the duty violated, the accused's state of mind, and the actual or potential injury caused by the accused's conduct. *Kluge*, 332 Or at 259; ABA Standard 3.0. We next determine whether any aggravating or mitigating circumstances exist. *Id*. Finally, we consider the appropriate sanction in light of this court's case law. *Id*. In determining the appropriate sanction, our purpose is to protect the public and the courts from lawyers who have not discharged properly their duties to clients, the public, the legal system, or the profession. *See* ABA Standard 1.1.

An exhaustive review of this court's case law is not necessary to the disposition of this case and would not benefit the bench, bar, or public. Here, the accused violated his duty to abide by the legal rules of procedure that affect the administration of justice. ABA Standard 6.0. The accused's conduct also caused actual harm to the procedural functioning of the Josephine County Circuit Court and potential harm to the accused's clients. In light of those determinations, under the applicable ABA Standards the presumptive sanction for the accused is a reprimand. *See* ABA Standard 6.23.

The trial panel found as aggravating factors that the accused had a prior history of discipline, had substantial experience in the practice of law, and had not demonstrated remorse for his conduct, *see* ABA Standard 9.22(c), (g), (i). We agree. It bears particular emphasis that the accused has a prior disciplinary history involving the same rule; specifically, he has previously violated RPC 8.4(a)(4) by failing to appear for a scheduled trial. ABA Standard 9.22(a). The misconduct at issue in this proceeding occurred after the misconduct at issue in *Carini I*, and some of it occurred while the accused was on probation for the prior violations. In *Carini I*, the trial panel made the following statement in its written opinion:

"[T]he trial panel admonishes the accused to regard the probation as a final opportunity, and specifically advises any future [trial] panel evaluating the conduct of the accused that it should regard the rules violations found in this case to be serious."

The accused's prior disciplinary record weighs in favor of imposing a greater-than-presumptive sanction. *In re Cohen*, 330 Or 489, 506, 8 P3d 952 (2000); *see also In re Jones*, 326 Or 195, 200, 951 P2d 149 (1997) (imposition of sanction for similar prior conduct before accused lawyer engaged in conduct at issue is significant aggravating factor).

With regard to mitigating factors, we find that the accused did not have a dishonest motive in failing to appear and in failing to ensure that the court could reach him by telephone, and that the accused cooperated with the disciplinary proceedings. ABA Standard 9.32(b), (e).

In light of the totality of circumstances, and with particular emphasis on the fact that the accused has previously been disciplined for violating the same rule at issue in these proceedings, we conclude that a 30-day suspension is appropriate. *Cf. In re Chase*, 339 Or 452, 461, 121 P3d 1160 (2005) (30-day suspension appropriate for repeated conduct violating a single disciplinary rule where both aggravating and mitigating factors are found).

The accused is suspended from the practice of law for 30 days, commencing 60 days from the date of filing of this decision.