Submitted on the record September 8, the accused suspended from the practice of law for two years, commencing 60 days from the date of filing of this decision October 26, 2000

## In re Complaint as to the Conduct of

## WILLIAM T. RHODES,
### *Accused.*

## (OSB 97-59; SC S46736)

13 P3d 512

William T. Rhodes, Lake Oswego, filed a brief *in propria persona*.

Mary A. Cooper, Assistant Disciplinary Counsel, Lake Oswego, filed the brief for the Oregon State Bar.

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, a trial panel of the Disciplinary Board concluded that the accused had violated DR 7-106(A) (prohibiting disregard of rulings of tribunal) and DR 1-102(A)(4) (prohibiting conduct prejudicial to administration of justice) by failing to comply with a document production order in 1993 and by failing to comply with a child support order in 1997. The trial panel also concluded that the accused violated DR 1-103(C) (requiring full and truthful responses to inquiries during disciplinary investigation) by failing to reply to letters from the Oregon State Bar (Bar) and the Local Professional Responsibility Committee (LPRC). The panel imposed a two-year suspension.

*De novo* review by this court is automatic. ORS 9.536(2), (3). The Bar has the burden of establishing alleged misconduct by clear and convincing evidence. BR 5.2. We hold that the Bar has established that the accused violated DR 7-106(A), DR 1-102(A)(4), and DR 1-103(C) and that the appropriate sanction is a two-year suspension.

We find the following facts. In 1993, a circuit court held the accused in contempt for failing to produce documents that the accused's wife had requested in connection with marital separation proceedings. In 1997, another circuit court held the accused in contempt for failing to make child support payments. Despite the accused's assertion that he could not pay the required amount, the court found that the accused's nonpayment was willful, because he was not making the effort to earn the income that he was capable of earning.[1]

In November 1996, the accused's former wife filed a complaint against the accused with the Bar. In December 1996, the Bar sent the accused two letters notifying him of the charges against him and requesting a response. The Bar

---

[1] As a result of that finding, the court sentenced the accused to 90 days in jail and three years' probation. In June 1998, after the Bar filed its complaint in this proceeding, the court revoked the accused's probation, finding that the accused had not made his support payments or complied with the other conditions of his probation. The accused has appealed the court's decision to revoke his probation, but that appeal has no bearing on this court's decision in this disciplinary proceeding.

sent those letters to the address for the accused on file with the Bar. The Bar received no response. In January 1997, the Bar sent the accused a third letter, by both certified and first-class mail. No one claimed the certified letter, and no one returned the first-class letter.

In April 1997, the Multnomah County LPRC investigated the matter. The LPRC attempted to contact the accused by mailing a letter to the address on file with the Bar. The postal service returned that letter marked "moved, left no address." The LPRC next sent a letter to the accused's parents' address, but received no response. The Bar also sent a letter to the accused's parents' address in May 1997 and received no reply. The LPRC sent a certified and a first-class letter to the accused's parents' house in May 1997, and the accused's mother accepted the certified letter. The accused eventually contacted the LPRC, which subpoenaed and deposed him in July 1997. The accused never contacted the Bar to discuss the alleged violations. He claims that he did not receive any of the letters that the Bar and the LPRC had sent to the address on file with the Bar, because he received mail only at his parents' address after November 1996. The accused admits, however, that he continued to live at the address on file with the Bar and that he did not notify the Bar of a change of address in November 1996.

The Bar alleged two causes of complaint against the accused. The first alleged that the accused violated DR 7-106(A) and DR 1-102(A)(4) by failing to comply with court orders, leading to the 1993 and 1997 contempt orders. The second alleged that the accused violated DR 1-103(C) by failing to cooperate with the Bar and the LPRC during the disciplinary inquiry. As noted, the trial panel found that the accused had committed each alleged violation and suspended the accused from the practice of law for two years.

■ DR 7-106(A) provides that "[a] lawyer shall not disregard * * * a ruling of a tribunal made in the course of a proceeding but the lawyer may take appropriate steps in good faith to test the validity of such * * * ruling." The Bar alleges that, under principles of issue preclusion, the 1993 and 1997

contempt orders conclusively establish that the accused disregarded the rulings of two trial courts and, therefore, conclusively establish that the accused twice violated DR 7-106(A).

The accused disputes the validity of the 1993 and 1997 orders. We agree with the Bar and the trial panel, however, that that argument is unavailing in this proceeding. The accused had the opportunity to appeal those orders after the court entered them, and he declined to do so.

The doctrine of issue preclusion prevents the accused from challenging the validity of the contempt orders in this proceeding. *See Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103-04, 862 P2d 1293 (1993) (articulating issue preclusion standard). To adjudge the accused in contempt, the circuit courts necessarily found that the accused acted "willfully." *See* ORS 33.015(2) (defining "[c]ontempt of court," in part, as violation of court order, "done willfully"). The court in 1997 necessarily found willfulness by clear and convincing evidence. *See* ORS 33.055(11) (requiring proof of contempt by clear and convincing evidence for imposition of remedial sanction other than confinement). The court in 1997 necessarily found willfulness beyond a reasonable doubt. *See id.* (requiring proof of contempt beyond a reasonable doubt for imposition of remedial sanction of confinement). Because the standard of proof in the contempt proceedings was at least as high as the standard of proof in this proceeding, the accused is precluded from relitigating the ultimate fact of whether he willfully violated the courts' orders. *Cf. In re Robert Neil Gygi*, 273 Or 443, 541 P2d 1392 (1975) (refusing to give preclusive effect to civil case ruling against lawyer in subsequent disciplinary proceeding, because standard of proof in civil proceeding was only preponderance of evidence).

A violation of DR 7-106(A) occurs when a lawyer disregards a tribunal's ruling made in the course of a proceeding, unless the lawyer's action amounts to "appropriate steps in good faith to test the validity" of the ruling. Here, the 1993 and 1997 contempt orders establish that the accused willfully violated court rulings on two occasions. The accused argues that his violations were not willful, but he does not assert that his noncompliance constituted a good faith attempt to

test the validity of the orders. We conclude that the Bar has met its burden of proving by clear and convincing evidence that the accused violated DR 1-706(A).

██ DR 1-102(A)(4) provides that it is professional misconduct for a lawyer to "[e]ngage in conduct that is prejudicial to the administration of justice." Prejudice to the administration of justice can result from multiple acts that cause some harm or a single act that causes substantial harm. *In re Haws*, 310 Or 741, 748, 801 P2d 818 (1990). Harm to the administration of justice can occur when a lawyer impairs either the substantive rights of a party or the procedural functioning of a case. *In re Meyer (I)*, 328 Or 211, 214, 970 P2d 652 (1999).

The Bar argues that the accused's willful misconduct, leading to the 1993 and 1997 contempt orders, prejudiced the administration of justice by requiring the accused's former wife, the district attorney, and the court system to expend substantial resources addressing the accused's conduct. The accused's failure to comply with the child support order impaired his former wife's substantive right to support and, the Bar alleges, forced her to borrow money to support their children. The accused asserts that he did not harm his former wife, because he paid her attorney fees associated with the 1993 contempt order proceedings, and because she wrongfully borrowed money from the children's trust fund to support herself and the children.

The accused's contentions do not negate the prejudice and harm that his conduct caused. The court system and the district attorney spent considerable time and resources dealing with the accused's noncompliance. We conclude that the accused's conduct can be viewed either as multiple acts that caused some harm or two individual acts that each caused substantial harm. The Bar has proved that the accused's conduct prejudiced the administration of justice. Therefore, we conclude that, by violating the courts' orders, the accused violated DR 1-102(A)(4).

DR 1-103(C) provides:

"A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and

comply with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege."

DR 1-103(C) requires full cooperation from a lawyer during a disciplinary investigation. *In re Schaffner*, 325 Or 421, 425, 939 P2d 39 (1997). "Partial cooperation, such as responding only when and if the matter escalates to an LPRC investigation, reduces the extent of the violation but does not absolve a lawyer from his or her obligation under the rule." *Id.*

■ The Bar asserts that the accused's failure to respond to letters from the Bar and the LPRC during late 1996 and early 1997 violated DR 1-103(C). As noted, the accused contends that he never received those letters. The trial panel did not believe that the accused's unforwarded mail simply accumulated in his unopened mailbox. The accused admits that he continued living at the address to which the Bar had addressed the letters and that he failed to notify the Bar of his new mailing address in November 1996. The accused cannot alter his mailing address simply by ceasing to check his mailbox. We are persuaded that the accused did receive the Bar's and the LPRC's letters at his residence. Once he received the letters, DR 1-103(C) obligated him to respond. *See Haws*, 310 Or at 751 ("Obviously, * * * where the accused fail[s] to respond at all [to Bar inquiries], he violate[s] DR 1-103(C).").

■ The accused also asserts that he cooperated with the LPRC by contacting its representative, requesting a subpoena, and attending a deposition. The accused did not remedy his failure to respond to the Bar's or the LPRC's initial letters by eventually cooperating with the LPRC. *See In re Vaile*, 300 Or 91, 101, 797 P2d 52 (1985) (determining that DR 1-103(C) requires response to Bar inquiries, in addition to cooperation with LPRC). We conclude that the accused's failure to respond to the letters from the Bar and the LPRC violated DR 1-103(C).

■ To determine the appropriate sanction in a disciplinary proceeding, we refer to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) and Oregon case law for guidance. *In*

*re Stauffer*, 327 Or 44, 66, 956 P2d 967 (1998). The court first makes an initial determination of the appropriate sanction by considering (1) the duty violated, (2) the accused's mental state, and (3) the actual or potential injury caused by the misconduct. ABA Standard 3.0; *Meyer (I)*, 328 Or at 216. The court may adjust the sanction in light of any aggravating or mitigating circumstances. ABA Standard 3.0; *Id*. at 216-17. In determining the appropriate sanction, the court also will examine the accused's conduct in light of the court's prior case law. *Id*. at 217.

Here, the accused violated his duties to the legal system, ABA Standards 6.1 and 6.2, and to the legal profession, ABA Standard 7.0. The evidence establishes that the accused acted with knowledge in committing the violations. *See* ABA Standards at 7 (defining "knowledge" as "conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result"); *In re Crist*, 327 Or 609, 615-16, 965 P2d 1023 (1998) (concluding that accused lawyer acted with knowledge when he failed to respond to Bar inquiries). His conduct caused substantial actual injury to the legal system by wasting the court's time and resources, to his family by increasing the cost of litigation and depriving his children of support, and to the Bar by increasing the costs of its investigation. Suspension is generally appropriate when a lawyer knowingly violates a court order or rule, and causes injury or potential injury to a client or party, or causes interference or potential interference with a legal proceeding. ABA Standard 6.22.

Several aggravating factors are present. The accused received two public reprimands for mishandling client funds and neglecting a legal matter, and, therefore, has prior disciplinary offenses. ABA Standard 9.22(a). He has shown a pattern of misconduct. ABA Standard 9.22(c). He has committed multiple offenses. ABA Standard 9.22(d). He has refused to acknowledge the wrongful nature of his conduct. ABA Standard 9.22(g). Finally, he harmed vulnerable victims—his former wife and children.[2] ABA Standard 9.22(h). There are no mitigating factors.

---

[2] The record demonstrates that the accused's refusal to pay child support in 1994, contrary to the court's order, forced his former wife to support herself and

We next consider our case law. In *Crist*, 327 Or at 619, this court imposed a five-year suspension on an accused lawyer who had violated DR 1-102(A)(4), DR 1-103(C), and DR 6-101(B) (neglecting a legal matter). In *In re Bourcier*, 322 Or 561, 571, 909 P2d 1234 (1996), the accused lawyer received a three-year suspension for violating a number of rules, including DR 1-102(A)(4) and DR 1-103(C). In *In re Miles*, 324 Or 218, 224, 923 P2d 1219 (1996), this court suspended an accused lawyer for 120 days for violating DR 1-103(C), even though the lawyer had not violated any other disciplinary rules.

Given the accused's pattern of failing to comply with his legal obligations and the harm that his conduct caused to his family and to the legal system, we conclude that a two-year suspension is appropriate.

The accused is suspended from the practice of law for two years, commencing 60 days from the date of filing of this decision.

---

their children by borrowing money from her friends, family, and church, and by continuing to work, against her doctor's orders, while she suffered from breast cancer.