Argued and submitted November 2, 2000, accused disbarred March 7, 2002

In re Complaint as to the Conduct of

# TERESE M. GUSTAFSON,
*Accused.*

(OSB 97-146; SC S43937)

41 P3d 1063

469-a

Wayne Mackeson, Portland, argued the cause and filed the briefs for the accused. With him on the briefs was Pat Birmingham.

Martha M. Hicks, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

Before Carson, Chief Justice, and Durham, Leeson, and Riggs, Justices.*

PER CURIAM

---

* Van Hoomissen, J., retired December 31, 2000, and did not participate in the decision of this case; Kulongoski, J., resigned June 14, 2001, and did not participate in the decision of this case; Gillette, De Muniz, and Balmer, JJ., did not participate in the consideration or decision of this case.

.

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) alleged that the accused violated Code of Professional Responsibility Disciplinary Rule (DR) 1-102(A)(2) (criminal act that reflects adversely on lawyer's honesty, trustworthiness or fitness to practice law); DR 1-102(A)(3) (dishonesty, fraud, deceit, or misrepresentation); DR 1-102(A)(4) (conduct prejudicial to administration of justice); DR 7-102(A)(5) (knowingly making false statement of law or fact); DR 7-102(A)(8) (knowingly engaging in illegal conduct or conduct contrary to DR); and DR 7-106(A) (disregarding ruling of tribunal).[1] The facts center on allegations that the accused failed to comply with a court order requiring the expunction of a juvenile criminal record and made false statements regarding her failure to comply. A trial panel of the Disciplinary Board found that the Bar has proved a majority of the charges and imposed the sanction of disbarment. In light of that penalty, review in this court is automatic. Bar Rule of Procedure (BR) 10.1.

■■ The Bar has the burden of establishing alleged misconduct by clear and convincing evidence. BR 5.2. This court has defined that standard as evidence establishing that the truth of the facts asserted is highly probable. *In re Johnson*, 300 Or 52, 55, 707 P2d 573 (1985). Although we review disciplinary proceedings *de novo*, we give weight to trial panel credibility findings. *In re Trukositz*, 312 Or 621, 629, 825 P2d 1369 (1992); *see* BR 10.6 (*de novo* standard). However, the testimony of an accused lawyer, if this court deems it credible, can be sufficient to establish facts. *In re Gildea*, 325 Or 281, 297, 936 P2d 975 (1997). In this proceeding, the trial panel made a specific finding that the accused was not credible.

For the reasons that follow, we find that the accused violated all the foregoing disciplinary rules and conclude that the accused should be disbarred.

---

[1] We decline to consider the Bar's statutory charges under ORS 9.527(3) (willful disobedience of court order regarding one's professional conduct), ORS 9.527(4) (willful deceit or misconduct in legal profession), and ORS 9.527(1) (conduct that would justify denying one's application to practice law), for the reasons set out in *In re Kimmell*, 332 Or 480, 487, 31 P3d 414 (2001).

## I. FACTS

We find that the evidence proves the facts set out below by clear and convincing evidence. The accused became a deputy district attorney in Clackamas County in 1981. In 1992, two preschool-aged girls accused a teenage boy in their neighborhood (the juvenile) and his parents of molesting them. The Clackamas County District Attorney's office filed a juvenile delinquency petition against the juvenile in juvenile court, and a grand jury returned indictments against the parents in circuit court. Eventually, the court dismissed the charges against the adults without prejudice, leaving only the juvenile matter as an active case.

In October 1995, the Bar filed an amended formal complaint against the accused in a disciplinary proceeding separate from this one. In that matter, the accused made a misrepresentation by omission to the juvenile's lawyer regarding alleged impeachment material. She also threatened the juvenile's lawyer with criminal or ethical prosecution without sufficient cause. This court determined that the accused violated DR 1-102(A)(3) (misrepresentation) and DR 1-102(A)(4) (conduct prejudicial to administration of justice), and suspended her for six months. *In re Gustafson,* 327 Or 636, 968 P2d 367 (1998) (*Gustafson I*).

In early 1995, while preparing for the juvenile's trial, the accused collected a large amount of documentary material, including binders, exhibits, and notes. At the close of trial, the trial judge in effect dismissed the charges, finding that the juvenile was not within the jurisdiction of the court.

After the trial, in April 1995, the accused sought and was granted permission by then Clackamas County District Attorney O'Leary to keep the trial materials so that she could use them to defend against the pending disciplinary proceedings, as long as she cleared that decision with another deputy, Nelson. Nelson gave permission to the accused, on the condition that the accused leave a copy in the office of what she took. The accused agreed to that condition, and she took her trial materials and original exhibits home.[2]

---

[2] The accused has not located or accounted for the copies that she allegedly left in the office. The Bar argues that the accused did not make the copies. It is just as

In May 1995, the juvenile's lawyer, Houze, filed a motion to expunge the record of the juvenile case under ORS 419A.262.[3] The court treated the expunction as a "best interests" expunction, in which expunction is appropriate if it is in the best interests of the juvenile and the public. *See* ORS 419A.262(7) (so stating). Houze delivered the motion to Judge Morgan, to the District Attorney's office, and to Nickerson, the juvenile court counselor responsible for the case. Nickerson telephoned the accused to ask about opposing the motion. The accused agreed to investigate that issue, although it is unclear whether she did so. Judge Morgan's judicial assistant also telephoned the accused and asked her if she would be opposing the expunction motion; the accused replied that she would not.

In June 1995, Judge Morgan granted the motion and ordered the expunction of the juvenile's records. The order required "that all judgments, orders, records and references subject to expunction held by any agency pertaining to the above-named person be destroyed within 21 days." A District Attorney's office secretary delivered a copy of the order to the accused either by giving it to her directly or by placing it on her chair.

In August 1995, the accused's lawyer, Shepley, learned of the expunction order (although he did not mention it to the accused until October 1996). The accused maintained that she first became aware of the expunction order in a conversation with District Attorney Foote, O'Leary's successor, around September 1995.

After receiving notice of the expunction motion and subsequent order, the accused neither notified Judge Morgan that she possessed records subject to the order, nor did she destroy those records. She had given some of the records to the lawyer who represented her in *Gustafson I* and submitted others to the Bar. Her lawyer also showed some of the records

---

possible, however, that the accused made the copies and then discarded them. Some testimony in the record placed the binders in the accused's office after she left the District Attorney's office. We decline to find that the accused did not make those copies, because the Bar has not proved that allegation by clear and convincing evidence.

[3] All references to ORS 419A.260 and ORS 419A.262 are to the 1995 version of the statutes.

to her witnesses. Bar counsel realized, when she saw the accused's exhibit list, that it contained records subject to the expunction order and notified the accused's lawyer. At an October 1996 disciplinary hearing in the prior Bar matter, the trial panel directed the parties to obtain a protective order from the circuit court, which they did.

Houze reacted to the disclosure of his client's expunged record by filing a motion to conduct a hearing before Judge Morgan to determine the accused's compliance with ORS 419A.262(22).[4] Lawyer Shepley now had a conflict, because he had used some of the juvenile papers in the pending Bar matter, possibly in violation of the expunction statute. The accused hired another lawyer, Tait, to represent her in the compliance hearing.

Houze issued a subpoena *duces tecum* to Tait, which requested that the accused produce:

> "any and all originals and copies of any and all records, reports, memoranda, pleadings, and all other documents which were a part of the Clackamas County district attorney case files concerning the * * * juvenile."

Tait described the subpoena to the accused over the telephone the night before the compliance hearing. Neither Tait nor the accused have described that conversation in any great detail. Nevertheless, in the context of the accused's testimony at the compliance hearing, we believe that the accused heard and understood the text of the subpoena.

The accused decided to produce only the documents that she had stored in binders that were labeled with the juvenile case number alone.[5] She contends that she left at home any binders that bore case numbers for both the adult and juvenile cases because "they were pertinent to the adult

---

[4] ORS 419A.262(22) (1995) provided:

"An order of expunction and list of complying agencies shall be released from confidentiality only on order of the court originating the order of expunction, based on a finding that review of a particular case furthers compliance with the expunction provisions of this chapter."

[5] The accused left at home various binders in the adult case or combined cases that contained, for example, medical, psychological, and police reports, and that she did not look through the individual binders to determine whether they contained documents regarding the juvenile case.

case." The material that she collected included notes for her opening and closing arguments, demonstrative aids such as transparencies, and a single-volume transcript. She put those documents in a cardboard box to take to the compliance hearing. She also put some of the trial exhibits, which she had promised to give back to the their original owners (*i.e.*, the victims' families), in the trunk of her car before she drove to the hearing.

■　At the hearing on December 3, 1996, Houze was surprised at the small size of the box that the accused produced.[6] He and the accused engaged in the following dialogue:

"Q.　Have you, in response to the subpoena served upon you through your counsel, brought to court with you today the materials that were sought by the subpoena?

"A.　Yes.

　　"* * * * *

"Q.　And what you have personally with you today is the originals minus what you gave to Mr. Shepley?

"A.　Correct.

　　"* * * * *

"Q.　Do you have those materials with you right there in front of you?

"A.　Yes.

　　"* * * * *

"Q.　* * * [D]o the contents of that box relate specifically to the subpoena that you were given?

"A.　I have never seen the subpoena. I have had it described to me on the telephone. And so, yes, it does.

---

[6] The accused maintains, apparently as a defense, that "it was obvious to all concerned * * * that the documents in the box were only a portion of all the documents she had in her possession." She contends that Houze and the court were not misled by the relatively small number of documents that she tendered in response to the subpoena. However, it is not a defense to misrepresentation in this context to argue that the deceived parties should have known better than to believe what the accused told them.

"Q. Are there any other records that you have had in your possession or still have in your possession in response to the subpoena that have not been produced today here in this box?

"A. No.

"Q. Okay. Apart from those that Mr. Shepley may have?

"A. * * * [E]verything in my possession that relates to the juvenile case in any way is in this box, as far as being materials that may have been, as I understand it, in any way involved in documenting that case.

"* * * * *

"Q. * * * What materials do you have at your home that you have not produced under the subpoena?

"A. I have materials that related to the adult case.

"Q. And did you make a determination yourself of what materials were within and what materials were without the ambit of the subpoena that was served?

"A. Did I decide?

"Q. Yes.

"A. My understanding is that this relates to documents that were in the juvenile court case. And so I took everything that I had that related to the juvenile court case in any way and put it in this box. The remaining documents are in the possession of my attorney.

"Q. So they are no longer in your home, is that correct?

"A. I have no more juvenile documents in my home, that is correct.

"* * * * *

"Q. * * * So the answer to my question is it was you, then, who made the determination of what materials you would produce today of all the materials you took out of the DA's Office, correct?

"A. Mr. Tait and I discussed the subpoena on the telephone, and I am complying with the subpoena as I understand it to be. * * *

"* * * * *

"Q. Can you tell us what quantity of material relative to that full box, remains in your home?

"A. I have nothing that remains in my home at the present time that has anything to do with the juvenile case. I did not exclude anything that I had. Whether I thought it was expunged material or could be considered expunged material, I put everything in the box that I had that related in any way to the juvenile case.

"Q. My question to you is: What quantity of material remains in your home that you took out of the District Attorney's Office relative to that box?

"A. You have all that I have from the juvenile court.

"Q. I am not asking specifically about juvenile court material, in your judgment. Of all the materials that were in your house, you made a determination of what materials you believed were pertinent to the subpoena, correct?

"A. If you would like to get me the subpoena I would be glad to read the subpoena. That is all the material that I have.

"* * * * *

"Q. * * * And when did you make the determination of what materials were responsive to the subpoena and which were not?

"A. When did I make that decision?

"Q. Yes.

"A. I don't think that I made a decision. I gathered up all the materials that had anything to do with the juvenile case. As I am understanding, you are talking about an expungement order in the juvenile case.

"* * * * *

"Q. Well, assume for a moment that the juvenile expunction statute does have the effect of physically destroying, permanently destroying all records that existed concerning a case, and assuming that that were a potential, that was going to be * * * * * ordered by a court, then all records that related to the case would, if

that order were signed, be gone forever for any purpose whatsoever, whether it was other matters possibly related to the case directly or proceedings ancillary to it, such as a Bar proceeding or anything else, right? They would be gone forever, wouldn't they?

"A. Yes. If you are suggesting that I kept these knowing that there was an expungement order, you are wrong."

During her compliance hearing testimony, the accused also claimed that she was unaware of the expunction motion and subsequent order at the time that each of them was filed, and did not learn of them until she had a conversation with Foote in September 1995.[7] She testified that she did not see a copy of the May 1995 expunction motion until October 1996. Other witnesses, however, testified that the accused was given a copy and was aware of the expunction motion when it was filed.

Near the conclusion of the hearing, the judge ordered the accused and her lawyer to produce "[a]nything that is obviously a juvenile document." In response, the accused tendered to the court the exhibits that she was carrying in the trunk of her car.

After the hearing, the accused and her lawyers tendered to the court several additional boxes of material, which included many documents and exhibits relating to the charges against the juvenile. Judge Morgan and his assistants reviewed the materials and determined that many of them were related to the juvenile case and, in Judge Morgan's view, were subject to expunction. We have reviewed those materials, and we find that they included "records, reports, memoranda, pleadings, and * * * other documents which were a part of the Clackamas County district attorney case files concerning the * * * juvenile," and, as a result, that they were within the ambit of the subpoena.

In sum, the facts that we find may be stated as follows: After the accused knew that the expunction motion had

---

[7] In 1997, the accused recalled that the deputy district attorney responsible for juvenile matters had sent the accused a note apprising her of the expunction motion while it was pending in 1995. The accused recalled that she wrote "OK TG" on the note and returned it to him. She did not remember those facts until after the compliance hearing.

been filed and that the order had been signed, she failed to inform Judge Morgan that she had records subject to expunction, failed to destroy those records in compliance with the order, and released those records in her prior Bar matter. Additionally, despite the fact the accused had relevant records in the trunk of her car and at home, she testified falsely at the compliance hearing that she had complied with the subpoena, that she had produced all the relevant records in her possession, and that she had no other records. She also testified falsely at the compliance hearing that she did not keep records relating to the juvenile case knowing that an expunction order had been entered.

## II. PROCEEDINGS BELOW

Count one of the Bar's amended complaint alleged that, after Judge Morgan signed the expunction order, the accused (1) failed to inform Judge Morgan that she possessed records subject to the expunction order; (2) failed to destroy those records in compliance with the expunction order; and (3) released those records in her prior Bar proceeding, in violation of DR 1-102(A)(2), DR 1-102(A)(4), DR 7-106(A), and ORS 9.527(3). Count two alleged that the accused testified falsely in the trial of her prior Bar matter, in violation of DR 1-102(A)(2), DR 1-102(A)(3), DR 1-102(A)(4), DR 7-102(A)(5), DR 7-102(A)(8), and ORS 9.527(4).[8] Count three alleged that the accused falsely testified at the compliance hearing, by stating that she had complied with the subpoena issued to her, that she had produced the relevant documents, and that she had produced everything she had and had nothing left at home, in violation of DR 1-102(A)(2), DR 1-102(A)(3), DR 1-102(A)(4), and DR 7-102(A)(8). Count four alleged that the accused falsely testified at the compliance hearing that: (a) she had made copies of any records that she had taken home and left copies of those records in the District Attorney's office; (b) she did not receive a copy of the expunction motion at the time that it was filed; (c) she was not aware that that motion had been filed; (d) she was not aware that the expunction order had been signed at the time that it was signed; (e) she had not seen a copy of the expunction motion before the compliance hearing; and (f) she did not keep

---

[8] The Bar later abandoned the second count of its complaint.

records relating to the juvenile case knowing that the expunction order had been entered, in violation of DR 1-102(A)(2), DR 1-102(A)(3), DR 1-102(A)(4), DR 7-102(A)(5), DR 7-102(A)(8), and ORS 9.527(4). Count five alleged that the accused's conduct would have warranted denying her application to the Bar, if she were applying for admission, under ORS 9.527(1).

After a hearing, the trial panel found that the Bar had sustained its burden of proof on counts one, three, sub-part (f) of four, and five. The trial panel made a finding that the accused was not credible, in that "[h]er testimony on issues large and small changed not only over the course of the many court and disciplinary proceedings in which she has been involved in the last four years, but also within the proceeding itself." The trial panel found that "[t]he accused knew by no later than October 1995 that an order had been entered," but "did not advise the court that she had documents subject to the motion at her home" or destroy any of the documents in her possession. In the trial panel's view, the accused had kept the records to use them in her prior Bar proceeding.

The trial panel found that, although the accused had brought only a small box of documents to the compliance hearing, she testified that she had brought with her to the courtroom all the documents subject to the subpoena and had brought everything in her possession that related "in any way" to the juvenile case. However, it was apparent at the compliance hearing that the accused still had documents at her home, and it turned out that she still possessed a large number of documents related to the juvenile case. In addition, the trial panel dismissed the accused's arguments that she had complied with the enforcement hearing subpoena in good faith, because, when she had stated under oath that she had brought everything with her to the compliance hearing, she had known that she had the juvenile case trial exhibits in the trunk of her car.

In determining a sanction, the trial panel noted that the accused's lack of honesty was pervasive and intentional and that, as a result of her actions, she caused at least potential injury to the juvenile whose records she released and

actual injury to the legal system. The trial panel concluded that "[t]he accused has refused to acknowledge the wrongful conduct involved in this case." The trial panel determined that the accused's testimony and conduct suggested that "the accused simply does not recognize the ethical bounds of her profession," and that she should be disbarred.

## III. DISCUSSION

### A. *Compliance With The Expunction Order*

#### 1. DR 1-102(A)(2)

The Bar charged that the accused violated DR 1-102(A)(2) by releasing the juvenile records that were subject to expunction under ORS 419A.260 and ORS 419A.262.

ORS 419A.260 and ORS 419A.262 provide a process by which a person's juvenile records relating to "contact" with a law enforcement agency may be expunged. "Expunction" includes "[t]he removal and destruction or sealing of a judgment or order related to a contact," ORS 419A.260(1)(b)(A), and "[t]he removal and destruction of all records and all references," ORS 419A.260(1)(b)(B). A "contact" is defined as "any instance in which a person's act or behavior, or alleged act or behavior, which could result in a juvenile court's assumption of jurisdiction," comes to the attention of a law enforcement agency, other state agency, or juvenile court. ORS 419A.260(1)(a); *see also* ORS 419B.100 (1995) (jurisdictional bases of juvenile court); ORS 419C.005 (1995) (same). A "record" includes "a fingerprint or photograph file, report, exhibit or other material which contains information relating to a person's contact with any law enforcement agency or juvenile court or juvenile department[.]" ORS 419A.260(1)(d).

On the application of either the person who was the subject of those records, the juvenile department, or on a court's own motion, the juvenile court may order expunction. ORS 419A.262(2). For example, the court may order expunction when it finds that the juvenile is not within the jurisdiction of the court, ORS 419A.262(2)(d), or when expunction is in the best interests of the juvenile and the public, ORS 419A.262(7). Notice of the expunction application must be

given to the district attorney in the county in which the proceedings are pending and to the district attorney in any county in which records may be kept, and both are permitted to file objections to the proposed expunction. ORS 419A.262(10)(a) and (11). After a court orders expunction, a copy of the order must be sent to each agency subject to that order. ORS 419A.262(16). Within 21 days of receipt, those agencies then are expected to indicate compliance by endorsing the order and returning it to the court or juvenile department. ORS 419A.262(16). Six weeks after the copies of the orders are sent out, the court provides the person whose record has been expunged with a copy of the expunction order, a list of complying and noncomplying agencies, and a written notice of rights and effects of expunction. ORS 419A.262(17). The juvenile court then expunges its own records, except the original expunction order and a list of complying and non-complying agencies, which are preserved under seal. *Id.*

Once a record is expunged, the contact that was the subject of the expunged record shall not be "disclosed" by any agency. ORS 419A.262(19). An order of expunction and a list of complying and noncomplying agencies may be "released" from confidentiality "only on order of the court originating the order of expunction, based on a finding that review of a particular case furthers compliance with the expunction provisions" of the statute. ORS 419A.262(22). More importantly, "[a] person who intentionally *releases* all or part of an expunged record commits a Class C misdemeanor."[9] ORS 419A.262(25) (emphasis added).

■ We conclude that the records that the accused possessed were subject to expunction. Whether the Clackamas County District Attorney's office might have had a meritorious ground for objecting to the proposed expunction is irrelevant. Because that District Attorney's office did not contest

---

[9] The person subject to the order has a civil right of action against "any person who intentionally violates the confidentiality provisions" of the statute, including punitive damages, costs, and attorney fees. ORS 419A.262(23). In addition, a "public employee" who intentionally violates an expunction order may be subject to dismissal from employment. ORS 419A.262(24). Although the statute addresses the compliance of state agencies, it also speaks in terms of enforcing compliance civilly against "any person," ORS 419A.262(23), criminally against "a person," ORS 419A.262(25), and by terminating "public employees." ORS 419A.262(24).

the expunction proceeding and the resulting order, the order was binding on that office and its personnel, including the accused. The accused argues that the statute applies to state agencies only, not to persons who possess records for their own purposes, and she maintains that she held the records as a private citizen for use in her Bar proceedings, not as an agent of the District Attorney's office. We reject that argument, because it ignores a vital fact, which is that the accused had access to the records only by virtue of her employment. Indeed, her possession of the records was related directly to the fact that she worked in the District Attorney's office, in that she took the records to defend herself from allegations of misconduct as a lawyer in that office. Moreover, the District Attorney did not transfer title of the records to her and make them her property, rather than the state's property. They remained the property of the District Attorney's office even after the accused took them home. A district attorney's office could not comply with the expunction statute merely by transferring possession of the records to another party, such as the accused. Rather, a district attorney must destroy records when ordered to do so. ORS 419A.260(1)(b)(B); ORS 419A.262. In this instance, the records that the trial court ordered destroyed became exhibits in another legal proceeding, a result that was not consistent with the purpose of the statute.

█ The Bar maintains that the accused "release[d]" the expunged juvenile records in her prior Bar proceeding, thereby violating ORS 419A.262(24). The statute does not define the term "release." To determine the intent of the legislature, we first look to the text and context of the statute. The text of the statute is the best evidence of legislative intent. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). If the intent is clear from the text and context, further analysis is unnecessary. *Id.*

██ Based on the following discussion, we conclude that the unmistakable intent of ORS 419A.262 is to preserve the confidentiality of a juvenile's contact with law enforcement once a court has ordered expunction of that juvenile's records. The term "release" must be understood in that context. For example, "release" commonly is defined to include "to set free from restraint." *Webster's Third New Int'l Dictionary*, 1917

(unabridged ed 1993). The restraint, in this instance, was the confidential nature of the expunged records. ORS 419A.262(22) provides that an order of expunction and a list of complying and noncomplying agencies may be "released from confidentiality" only on order of the original court. "Release" thus refers to a termination of the confidentiality required by statute. "Releas[ing]" records unlawfully means to make them available to others, thus disregarding their confidential status.

In sum, the accused's release of the juvenile records was unlawful. Disregarding the court's order to expunge the records and disregarding the juvenile's interest in the confidentiality of the records, the accused used them as exhibits in her defense in the prior Bar matter. Although those records might have been useful to her defense, once she was aware of the expunction order, she was not privileged to use them in her Bar proceeding without seeking leave of the court that ordered the expunction.

 It is professional misconduct for a lawyer to "[c]ommit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law." DR 1-102(A)(2). A charge under DR 1-102(A)(2) requires the court to determine initially what criminal act the accused committed. *In re Allen*, 326 Or 107, 102-21, 949 P2d 710 (1997). As noted, under ORS 419A.262(25), "[a] person who intentionally releases all or part of an expunged record commits a Class C misdemeanor."

 Next, we must determine whether that criminal act reflects adversely on the lawyer's honesty, trustworthiness, or fitness to practice law. To do so, we consider:

> "the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct."

*Allen*, 326 Or at 122 (quoting *In re White*, 311 Or 573, 589, 815 P2d 1257 (1991)). Here, the accused acted intentionally, breaching the juvenile's privacy to benefit herself and injuring the juvenile in the process. The accused demonstrated

disrespect for the law in disregarding the court's order of expunction and her use of the records reflected adversely on her fitness to practice law.

2. DR 1-102(A)(4)

 It is professional misconduct for a lawyer to "[e]ngage in conduct that is prejudicial to the administration of justice." DR 1-102(A)(4). Prejudice to the administration of justice results "from multiple acts that cause some harm or a single act that causes substantial harm." *In re Rhodes*, 331 Or 231, 236, 13 P3d 512 (2000) (citing *In re Haws*, 310 Or 741, 748, 801 P2d 818 (1995).) "Harm to the administration of justice can occur when either the substantive rights of a party to the proceeding or the procedural functioning of a case or hearing is impaired." *In re Meyer*, 328 Or 211, 214, 970 P2d 652 (1999). Here, the accused undermined the expunction proceedings by releasing the juvenile's records in her Bar disciplinary matter, by failing to inform Judge Morgan that she possessed records subject to the expunction order, and by failing to destroy those records in compliance with the expunction order. Accordingly, we conclude that the accused engaged in acts that caused harm to the administration of justice and thereby violated DR 1-102(A)(4).

3. DR 7-106(A)

 "A violation of DR 7-106(A) occurs when a lawyer disregards a tribunal's ruling made in the course of a proceeding, unless the lawyer's action amounts to 'appropriate steps in good faith to test the validity' of the ruling." *Rhodes*, 331 Or at 235. The accused does not argue that she was attempting to test the validity of the expunction order. For the same reasons that we have concluded that the accused violated DR 1-102(A)(2) and (A)(4), we conclude that she violated DR 7-106(A).

B. *False Testimony*

As noted above, we conclude that the accused gave false testimony under oath at the compliance hearing regarding her compliance with the compliance hearing subpoena. We also conclude that she possessed records relating to the juvenile case and knew that the expunction order had been entered, yet testified under oath to the contrary.

### 1. DR 1-102(A)(2)

It is professional misconduct for a lawyer to "[C]ommit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law." DR 1-102(A)(2). First, we identify the criminal act, *Allen*, 326 Or at 121, which in this instance is perjury. *See* ORS 162.065 (stating perjury occurs when "person makes a false sworn statement in regard to a material issue, knowing it to be false"). We then consider the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct. *Allen*, 326 Or at 122 (so stating). We need not undertake that detailed analysis here, because it is axiomatic that false testimony under oath "reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law" under DR 1-102(A)(2). We therefore conclude that the accused violated DR 1-102(A)(2).

### 2. DR 1-102(A)(3)

It is professional misconduct for a lawyer to "[e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation." DR 1-102(A)(3). The accused's misrepresentations at the compliance hearing were both false and material, in that they concerned the subject of the hearing. *See In re Kluge*, 332 Or 251, 255, 27 P3d 102 (2001) (misrepresentation requires showing of materiality and materiality involves information that would or could influence significantly hearer's decision-making process). We conclude that the accused's false testimony under oath violated DR 1-102(A)(3).

### 3. DR 1-102(A)(4)

As noted, it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice. DR 1-102(A)(4). Prejudice to the administration of justice may result from a single act that could cause substantial potential harm. *Rhodes*, 331 Or at 236. We conclude that the accused's false testimony under oath violated DR 1-102(A)(4).

### 4. DR 7-102(A)(5)

■ In the lawyer's representation of a client or in representing the lawyer's own interests, a lawyer shall not "[k]nowingly make a false statement of law or fact." DR 7-102(A)(5). In making false statements under oath at the compliance hearing, we conclude that the accused violated DR 7-102(A)(5).

### 5. DR 7-102(A)(8)

■ In the lawyer's representation of a client or in representing the lawyer's own interests, a lawyer shall not "[k]nowingly engage in * * * illegal conduct or conduct contrary to a disciplinary rule." DR 7-102(A)(8). The accused's false testimony under oath was both illegal and contrary to other disciplinary rules, as we have discussed. We conclude that the accused violated DR 7-102(A)(8).

## IV. SANCTION

Having determined that the accused violated a number of ethical rules, we turn now to the determination of an appropriate sanction. In addition to its own cases, this court refers to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) for guidance in determining the appropriate sanction for lawyer misconduct. *See, e.g., Kluge* at 259.

■ This court first considers three factors in determining the appropriate sanction: the duty violated; the accused lawyer's mental state; and the actual or potential injury caused by the accused lawyer's misconduct. *See, e.g., id.*; ABA Standard 3.0. We then examine any aggravating or mitigating circumstances to determine if the sanction should be adjusted. *See, e.g., Kluge* at 259; ABA Standard 3.0. Finally, we compare prior Oregon cases and the sanctions imposed in them. *In re Devers*, 328 Or 230, 244, 974 P2d 191 (1999).

### A. *Preliminary Considerations*

The accused violated her duty to the public to maintain personal integrity. ABA Standard 5.1; *see In re Unrein*, 323 Or 285, 288, 917 P2d 1022 (1996) (lawyer violated duty to maintain personal integrity by making misrepresentations in filing for unemployment benefits). Similarly, the accused

violated her duty to the legal system to refrain from false statements, fraud, and misrepresentation. ABA Standard 5.0, 5.1.

The three mental states under the ABA standards are intentional, knowing, and negligent. According to those standards, an intentional act is one done with "the conscious objective or purpose to accomplish a particular result." ABA Standards at 6.

> " 'Knowledge' is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result."

*Id.* at 7. We conclude that the accused acted intentionally because the goal of her conduct was to mislead the court during the compliance hearing about what she had in her possession and her knowledge of the expunction order, and to retain the records for her own use in her disciplinary proceeding.

Next, we conclude that the juvenile suffered injury from the accused's misuse of his expunged records. Injury may range from serious to slight. ABA Standards at 7. "[A] reference to 'injury' alone indicates a level of injury greater than 'little or no' injury." *Id.* The juvenile was entitled to full compliance with the expunction order. Further court proceedings were necessary, because the accused had the records, did not bring that fact to the attention of the juvenile court, and did not destroy them. In addition, the legal system suffered injury, because a trusted law enforcement official, sworn to uphold this state's laws and seek justice, made serious misrepresentations during a judicial proceeding.

Disbarment is an available sanction when a lawyer, with the intent to deceive the court, makes a false statement and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding. ABA Standard 6.11. Disbarment also is available when "a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation or theft." ABA Standard 5.11(a). Additionally, a lawyer may be

disbarred for engaging in any other intentional conduct that involves "dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects upon the lawyer's fitness to practice" law. ABA Standard 5.11(b).

## B. *Aggravating and Mitigating Factors*

 "[A]ggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed." ABA Standard 9.21. Having been admitted to the Bar in 1981, the accused has substantial experience in the practice of law. ABA Standard 9.22(i).[10] She also has a prior disciplinary record. ABA Standard 9.22(a); *see Gustafson I*, 327 Or 636 (six-month suspension for violating DR 1-102(A)(3) and DR 1-102(A)(4) for conduct related to earlier portion of facts underlying this matter). In weighing prior offenses, we consider the relative seriousness of the prior offense and resulting sanction; the similarity of the prior offense to the offense in the case at bar; the number of prior offenses; the relative recency of the prior offense; and the timing of the current offense in relation to the prior offense and resulting sanction, specifically, whether the accused lawyer had been sanctioned for the prior offense before engaging in the offense in the case at bar. *In re Jones*, 326 Or 195, 200, 951 P2d 149 (1997) (describing weight of prior offenses). The prior offense arose from the same case as the current offense and the kind of offense was similar, both relating to misrepresentation and conduct prejudicial to the administration of justice. The accused, however, was not sanctioned for the prior offense before engaging in the offenses before us. For that reason, we conclude that the prior offense carries little weight.

"[M]itigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." ABA Standard 9.31. Neither the Bar

---

[10] Arguably, as a person charged with enforcing laws for the protection of the public, the accused in this case ought to be held to a higher standard than other lawyers. However, the accused in *In re Leonhardt*, 324 Or 498, 930 P2d 844 (1997) (former district attorney disbarred for crimes committed in office) was not held to a higher standard, and we decline to hold the accused in this matter to a standard different from that which we apply to other lawyers.

nor the accused argues that any mitigating circumstances exist.

C. *Oregon Cases*

This court consistently has held under similar circumstances that intentional misrepresentations by a lawyer to a court, particularly misrepresentations made under oath, adversely reflect upon the lawyer's fitness to practice law and may subject a lawyer to disbarment. *See, e.g., In re Garvey*, 325 Or 34, 932 P2d 549 (1997) (disbarment for lying under oath and assisting escape); *In re Spies*, 316 Or 530, 852 P2d 831 (1993) (misrepresentations to the court, and other irresponsible conduct, justified disbarment); *In re Miller*, 310 Or 731, 801 P2d 814 (1990) (misrepresentations to the court, in light of prior record, justified disbarment); *In re Hawkins*, 305 Or 319, 751 P2d 780 (1988) (filing false affidavit with probate court justified disbarment).

Considering the totality of accused's conduct and the absence of any mitigating circumstances, we conclude, in accordance with our case law, that disbarment is the appropriate sanction.

The accused is disbarred, effective 60 days from the date of filing of this decision.