Argued and submitted May 4, accused suspended from practice of law for 30 days, commencing 30 days from date of filing of this decision October 27, 2005

# In re Complaint as to the Conduct of

# STEVEN A. CHASE,
*Accused.*

## (OSB 03-05; SC S51613)

121 P3d 1160

Brenda K. Baumgart, Barran Liebman, LLP, Portland, argued the cause and filed the brief for the accused. With her on the brief was Bradley F. Tellam, Portland.

Mary A. Cooper, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the briefs for the Oregon State Bar.

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar charged the accused with violating the Oregon Code of Professional Responsibility Disciplinary Rule (DR) 7-106(A)[1] by failing to comply with a child support order. DR 7-106(A) provides that "[a] lawyer shall not disregard * * * a ruling of a tribunal made in the course of a proceeding * * *." The accused conceded that he had violated that rule. A trial panel of the Disciplinary Board concluded that the accused had violated DR 7-106(A) and imposed a public reprimand as a sanction. The Bar sought review, requesting that the accused be suspended from the practice of law for six months and one day. We review this case *de novo*, ORS 9.536(2). For the reasons that follow, we conclude that the appropriate sanction for the accused's violation is a 30-day suspension from the practice of law.

We find the following facts by clear and convincing evidence. The accused joined the Bar in 1989 and has no previous disciplinary record. In 1999, he and his wife dissolved their marriage. The judgment of dissolution required the accused to pay $550 per month in child support.

Because the accused paid his child support obligation infrequently, the circuit court issued an order to show cause why it should not hold him in contempt for failing to comply with the court's support order. By the time that the circuit court heard the matter in early 2001, the accused owed more than $10,000 in unpaid child support. The court entered a judgment of contempt finding that the accused's "failure to comply with the child support order was willful" and that he had "not established [an] inability to comply." *See* ORS 33.015(2) (listing acts, if done willfully, that qualify as "contempt of court"). The court sentenced the accused to three years of probation and 30 days in jail, imposition of which was suspended, and ordered him to pay child support. The accused repeatedly failed to comply with the terms of his probation. As a result, the court held multiple hearings to

---

[1] The Oregon Rules of Professional Conduct became effective January 1, 2005. Because the conduct at issue here occured before that date, the Oregon Code of Professional Responsibility applies.

address the accused's failure to comply. Police officers twice arrested the accused on bench warrants, and he eventually served his 30-day jail sentence. The court later terminated his probation.

The Bar filed a complaint alleging that the accused had violated DR 7-106(A) by disregarding the circuit court order that he pay child support. At the time of the disciplinary hearing, the accused was almost $33,000 in arrears. The accused conceded that his prior contempt of court constituted a *per se* violation of DR 7-106(A). He testified, however, that, after his divorce, his solo practice had declined, he had suffered financial difficulties, and he was severely depressed. The accused submitted a March 2004 letter from a psychiatrist who had evaluated him in May 2002 and had found that he suffered from "Adult Attention-deficit/Hyperactivity Disorder." The psychiatrist stated that the accused's symptoms caused "significant impairment in his adult life, in both family and work domains." The trial panel found that the accused's mental disability was the principal cause of his misconduct and imposed a public reprimand.

Because the accused does not challenge the trial panel's determination that he violated DR 7-106(A), the only issue presented here is the appropriate sanction. This court refers to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) and Oregon case law for guidance in determining the appropriate sanction. *In re Stauffer*, 327 Or 44, 66, 956 P2d 967 (1998). We first consider "(1) the duty violated, (2) the accused's mental state, and (3) the actual or potential injury caused by the misconduct." *In re Rhodes*, 331 Or 231, 238, 13 P3d 512 (2000). This court then may adjust the sanction if any aggravating or mitigating circumstances exist. *Id.*

Here, the accused violated his duty to the legal system by abusing the legal process. ABA Standard 6.2 (includes failing "to obey any obligation under the rules of a tribunal"). As to mental state, the ABA Standards recommend a more severe sanction for a lawyer who acts with a higher level of culpability. The ABA Standards suggest disbarment "when a lawyer knowingly violates a court order * * * with the intent to obtain a benefit for the lawyer * * *, and causes serious

injury or potentially serious injury to a party." ABA Standard 6.21. On the other hand, the ABA Standards suggest suspension "when a lawyer knowingly violates a court order * * *, and there is injury or potential injury to a * * * party." ABA Standard 6.22.

 The accused argues that he knowingly violated the court order, but did not do so with the intent of benefiting from that violation. The Bar asserts, however, that, under the principles of issue preclusion, the circuit court's determination under ORS 33.015(2) that the accused's failure to pay was "willful" required the trial panel in this disciplinary proceeding, as well as this court, to conclude that the accused had acted with "intent."

The Bar contends that this court's decision in *Rhodes* supports its assertion. In that case, a trial court twice held that an accused lawyer was in contempt of court, once for failing to produce documents in connection with a marital separation proceeding and again for disobeying an order to make child support payments. *Rhodes*, 331 Or at 233. In a subsequent disciplinary proceeding, the trial panel concluded that the accused lawyer had violated DR 7-106(A) and DR 1-102(A)(4) by failing to comply with court orders. *Id.* at 234. Before this court, the accused lawyer disputed the validity of the contempt orders. *Id.* at 235. This court held that the accused lawyer was precluded from challenging the contempt orders in his subsequent disciplinary proceeding:

> "To adjudge the accused in contempt, the circuit courts necessarily found that the accused acted 'willfully.' *See* ORS 33.015(2) (defining '[c]ontempt of court,' in part, as violation of court order, 'done willfully'). * * * Because the standard of proof in the contempt proceedings was at least as high as the standard of proof in this proceeding, the accused is precluded from relitigating the ultimate fact of whether he willfully violated the courts' orders."

*Id.*

The Bar misconstrues this court's holding in *Rhodes*. *Rhodes* stands for the proposition that an accused lawyer is precluded from challenging the validity of a prior contempt order in a subsequent disciplinary proceeding and that the prior contempt order conclusively establishes that the

accused lawyer disregarded a ruling of a tribunal in a proceeding, in violation of DR 7-106(A). 331 Or at 235. In *Rhodes*, this court concluded that the "evidence establish[ed] that the accused acted with *knowledge* in committing the [disciplinary rule] violations," despite the fact that he had acted willfully in violating the circuit courts' orders for purposes of the contempt of court proceeding. *Id.* at 238 (emphasis added). The ABA Standards define "knowledge" as the "conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA Standards at 7. Contrary to the Bar's assertion, *Rhodes* does not hold that the trial panel in a subsequent disciplinary proceeding also must find, by virtue of the earlier contempt order, that an accused lawyer acted with a mental state of "intent."

Moreover, the Bar incorrectly equates "willfulness," as ORS 33.015(2) uses that term, with "intent," as the ABA Standards use that term. The Bar offers no authority for that assertion. This court has held that "proof that a party had knowledge of a valid court order and failed to comply with that order" establishes a finding of "willfulness" under ORS 33.015(2). *State ex rel Mikkelsen v. Hill*, 315 Or 452, 458, 847 P2d 402 (1993). The ABA Standards define "intent" as "the conscious objective or purpose to accomplish a particular result." ABA Standards at 7. In our view, the two definitions do not equate: "willfulness" under ORS 33.015(2) does not require the conscious purpose that describes "intent" in the ABA Standards. We conclude that the circuit court's determination that the accused acted willfully in failing to comply with the court's orders does not necessarily establish that he acted intentionally under the ABA Standards when he violated DR 7-106(A).[2]

■ The Bar argues that it proved that the accused acted with intent through issue preclusion; it does not refer to evidence in the record that shows intent. Evidence in the record demonstrates that the accused tried to find employment, cared for his children, and was not trying to harm them by

---

[2] For the same reasons, the Bar's reliance on *Couey and Couey*, 312 Or 302, 821 P2d 1086 (1991), which was an appeal of a contempt order and does not involve a subsequent disciplinary hearing, is inapposite.

withholding child support. On *de novo* review, we find that the accused acted with knowledge in violating the court's support order. The evidence in the record is mixed as to whether the accused acted with a conscious objective or purpose to accomplish a particular result. Consequently, the Bar did not prove by clear and convincing evidence that the accused's conduct was intentional.

■ The next issue that we address is the actual or potential injury that the accused's misconduct caused. The accused's conduct caused actual injury to the legal system by consuming a scarce resource (*i.e.*, the circuit court's time) that should have been available to others, and to the accused's family by depriving his children of support. As noted, the ABA Standards recommend suspension for a knowing violation of a court order that causes a party injury. ABA Standard 6.22. In determining whether that sanction is appropriate, however, we must consider any aggravating and mitigating circumstances and this court's case law.

"[A]ggravating circumstances are any considerations, or factors that may justify an increase in the degree of discipline to be imposed." ABA Standard 9.21. We find that two aggravating circumstances are present here. First, the accused engaged in a pattern of misconduct by failing repeatedly to pay the child support that the circuit court had ordered. ABA Standard 9.22(c). Second, the accused joined the Bar in 1989 and has substantial experience in the practice of law. ABA Standard 9.22(i).

■ The Bar submits that the accused also acted with a selfish motive, ABA Standard 9.22(b), refused to acknowledge the wrongful nature of his conduct, ABA Standard 9.22(g), and was indifferent to making restitution, ABA Standard 9.22(j). The Bar presented evidence that the accused left a message on his former wife's answering machine stating in part that "I will rot in that jail or prison before I will spend one single minute earning one single penny for you." The accused testified he had acted out of depression when placing that call and that he did want to pay the child support. He testified that he had difficulties in obtaining employment, which left him with little money, and at times he had to sleep in his car because he could not afford housing. The accused

submitted a letter from a friend who stated that the accused had a good relationship with his sons and sometimes went without food so that he could provide for his children. Another friend of the accused's testified that the accused lived frugally and spent little money on himself. In addition, the accused repeatedly acknowledged that he was at fault for not paying child support. The record also shows that the accused attempted to pay the support notwithstanding his difficult economic circumstances. The evidence in the record concerning the additional aggravating factors for which the Bar advocates is mixed. On balance, the Bar did not establish those aggravating factors by clear and convincing evidence.

■ Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." ABA Standard 9.31. The trial panel found the following mitigating factors: (1) absence of a prior disciplinary record, ABA Standard 9.32(a); (2) absence of a dishonest or selfish motive, ABA Standard 9.32(b); (3) personal or emotional problems, ABA Standard 9.32(c); (4) full and free disclosure to disciplinary board and a cooperative attitude toward proceedings, ABA Standard 9.32(e); (5) good character or reputation, ABA Standard 9.32(g); (6) mental disability, ABA Standard 9.32(i); (7) imposition of other penalties or sanctions, ABA Standard 9.32(k); and (8) remorse, ABA Standard 9.32(l). The Bar disputes only the trial panel's conclusion that the accused suffered from a mental disability and that his "medical condition was principally responsible for his failure to comply with the court orders." With two exceptions that we discuss below, we agree with the trial panel's conclusion regarding the mitigating factors that apply here.

There is no evidence in the record supporting the accused's good reputation as a lawyer. The trial panel based its contrary decision on evidence supporting the accused's reputation as a parent, not as a lawyer, as the ABA Standards require. The mitigating factor of good "character or reputation," ABA Standard 9.32(g), is inapplicable here.

■ We turn to the mitigating factor of mental disability. Under the ABA Standards, mental disability may be a mitigating factor when an accused shows that (1) there is medical

evidence of the disability; (2) the disability caused the misconduct; (3) he has achieved a meaningful and sustained period of recovery from his disability; and (4) "the recovery arrested the misconduct and recurrence of that misconduct is unlikely." ABA Standard 9.32(i) (amended 1992); *see also In re Cohen*, 330 Or 489, 502, 8 P3d 953 (2000) (applying same test), and *In re Murdock*, 328 Or 18, 29, 968 P2d 1270 (1998) (same). The accused did present some evidence of a mental disability and we find that, at least to some degree, that disability affected his ability to gain or maintain employment and hampered his ability to pay child support. However, we do not treat the accused's disability as a mitigating factor here because, as we discuss below, the evidence does not establish that the accused has recovered from any mental disability for a "meaningful and sustained period" or that his recovery, if it exists, has arrested the likelihood of future misconduct.

The accused testified that, for part of 2002, he took medication for his mental disability and that the medication was beneficial and helped him to think more clearly. However, he did not continue to use the medication, because he could not afford it. The letter from the accused's psychiatrist stated that "a trial of medications" had produced a positive response in the accused and that he "would benefit from treatment with medications and working with an expert." That evidence does not show recovery from the disability. Instead, it only shows that the accused needed treatment. *See In re McDonough*, 336 Or 36, 45, 77 P3d 306 (2003) (finding that, although accused lawyer recognized a need for treatment, he did not establish that he accomplished a "meaningful and sustained recovery"). Neither does the evidence that the accused was to start employment at a small firm in April 2004 show that he had recovered from his disability. The evidence does not show that a recurrence of his misconduct is unlikely. *Cf. In re Cohen*, 330 Or at 503-4 (finding recovery from mental disability when several witnesses and mental health therapist testified that accused lawyer was on medication for a significant period, it had improved his mental health, and he would continue to improve and recurrence was unlikely); *Murdock*, 328 Or at 29-30 (declining to find chemical dependency as a mitigating factor when

accused failed to demonstrate causation, recovery, or unlikeliness of recurrence). We therefore conclude that the mitigating factor of mental disability is inapplicable to this proceeding.

We next consider this court's case law. The case most helpful is *Rhodes*, 331 Or at 237-39, if only because of its distinguishing elements. In that case, the accused lawyer violated DR 7-106(A) and DR 1-102(A)(4) (prohibiting conduct prejudicial to justice) by failing to pay child support. The accused lawyer also violated DR 1-103(C) (requiring full and truthful responses to inquiries during disciplinary proceedings) by failing to respond to numerous letters sent to him by the Bar and the Local Professional Responsibility Committee regarding the charges against him. This court found several aggravating factors, including prior disciplinary offenses, but no mitigating circumstances and imposed a two-year suspension. *Id.* at 239.

In contrast to *Rhodes*, both mitigating factors and aggravating factors are present here. The accused violated one disciplinary rule and has no record of prior discipline. In those respects, *Rhodes* is distinguishable. A suspension is nonetheless appropriate here, however, because the accused repeatedly failed to pay child support and he acted knowingly in violating the circuit court's support order. However the facts of this case, including the facts that distinguish this case from *Rhodes*, require imposition of a less stringent sanction. Considering the record as a whole, we conclude that the appropriate sanction is a 30-day suspension.

The accused is suspended from the practice of law for 30 days, commencing 30 days from the date of filing of this decision.