NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No. OR-10-1371-JuClPa |
| | ) | |
| PAUL DOUGLAS KNIGHT, | ) | Bk. No. 10-30580 |
| | ) | |
| Debtor. | ) | Adv. No. 10-03092 |
| _____ | ) | |
| ALLAN F. KNAPPENBERGER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | M E M O R A N D U M[*] |
| | ) | |
| PAUL DOUGLAS KNIGHT, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on October 20, 2011
at Portland, Oregon

Filed - November 7, 2011

Appeal from the United States Bankruptcy Court
for the District of Oregon

Honorable Randall L. Dunn, Bankruptcy Judge, Presiding
_____

Appearances: Appellee Allan F. Knappenberger argued pro se.
_____

Before: JURY, CLARKSON,[**] and PAPPAS Bankruptcy Judges.

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[**] Hon. Scott C. Clarkson, Bankruptcy Judge for the Central District of California, sitting by designation.

-1-

Appellant-creditor, Allan F. Knappenberger ("Knappenberger") appeals the bankruptcy court's (1) judgment dismissing his adversary complaint against appellee, chapter 7[1] debtor Paul Douglas Knight and (2) order denying Knappenberger's motion to amend the judgment.

After a trial, the bankruptcy court dismissed the complaint on the grounds that Knappenberger did not prove that his state court contempt judgment against debtor satisfied the willful and malicious injury elements of the discharge exception under § 523(a)(6). On appeal, Knappenberger argues that the bankruptcy court erred in its application of the law to the undisputed facts of this case. We disagree and AFFIRM.

## I.   FACTS[2]

Knappenberger, an attorney, sued debtor in the Oregon state court for unpaid attorney's fees. On January 22, 2008, the state court entered a general judgment ("General Judgment") for Knappenberger and against debtor by default for the sum of $1,634.39 plus costs of $471.20, bearing interest at 9%. Debtor did not pay the General Judgment.

In early 2009, Knappenberger began collection efforts by moving for and obtaining an order from the state court which required debtor to appear for a judgment debtor exam on May 13, 2009. Debtor did not appear and Knappenberger obtained a second

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] We take most of the undisputed facts from the bankruptcy court's Memorandum Opinion filed September 17, 2010.

order which required debtor to appear for a judgment debtor exam on June 12, 2009. Debtor again did not appear and, as a result, the state court issued an Order to Show Cause, requiring debtor to appear and show cause why he should not be held in contempt of the court's previous orders. The order proposed sanctions in the amount of $500, or one percent of debtor's gross income (whichever was greater), for each day that the contempt of court continued. Knappenberger served debtor with the notice of the order to show cause.

Debtor did not appear at the August 14, 2009, order to show cause hearing. The state court found that debtor was in willful contempt of court for his failure to obey both judgment debtor exam orders. As a consequence, the state court imposed remedial sanctions for $687.03 and $20.00 per day, or $600.00 per month, beginning on August 14, 2009, until debtor complied with the orders. On August 26, 2009, the state court entered a supplemental judgment ("Supplemental Judgment") for Knappenberger that reflected these findings.

In December 2009, debtor wrote Knappenberger stating that he intended to string Knappenberger along so that Knappenberger received payment at debtor's convenience. However, in the same letter debtor offered $700 to settle the judgment debt for the unpaid legal fees. Knappenberger did not accept the offer.

On January 27, 2010, debtor filed his chapter 7 petition. At that time, debtor was receiving unemployment compensation benefits of $172.50 a month. Debtor's schedules reflected that he owned no real property, and his personal property assets, with an aggregate value of $2,480, consisted of household goods

and furnishings, books, clothing and a dog, all of which were claimed as exempt. Debtor's schedules further showed that he did not own a car.[3]

Knappenberger filed an adversary complaint against debtor on March 26, 2010, seeking to except the debts contained in the General Judgment and Supplemental Judgment from discharge under § 523(a)(6). Debtor answered by denying all allegations in the complaint.

On August 2, 2010, the bankruptcy court held a trial on the matter; debtor did not appear.[4] Knappenberger's evidence, in the form of exhibits, were all admitted at the trial and are part of the record in this appeal. The exhibits generally consisted of the General Judgment, the state court orders regarding the judgment debtor exams, debtor's letter offer of settlement, and the Supplemental Judgment. After hearing Knappenberger's argument, the bankruptcy court found that the evidence did not prove that debtor's failure to appear at the court ordered judgment debtor exams met the elements for a willful and malicious injury under § 523(a)(6). Accordingly, the bankruptcy court dismissed the adversary proceeding by order entered on August 31, 2010.

On September 7, 2010, Knappenberger filed a motion to amend

---

[3] We take judicial notice of debtor's schedules which were not included in the record. Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[4] Knappenberger represented at trial that he had received a letter from debtor's mother advising him that debtor had been imprisoned for a short term and would enter rehab upon his release.

the judgment, asserting that the bankruptcy court erred in its application of the law. The bankruptcy court denied the motion in a Memorandum Opinion and entered a separate order on September 17, 2010. Knappenberger timely appealed.[5]

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court erred by finding that Knappenberger did not prove, by a preponderance of the evidence, that debtor's failure to appear at his judgment debtor exams satisfied the willful and malicious injury elements of the discharge exception under § 523(a)(6).

## IV. STANDARDS OF REVIEW

The issue of dischargeability of a debt is a mixed question of fact and law that is reviewed de novo. Miller v. United States, 363 F.3d 999, 1004 (9th Cir. 2004). We review the bankruptcy court's factual findings for clear error. Rule 8013.

We review for abuse of discretion a bankruptcy court's denial of a motion to alter or amend the judgment. Ta Chong Bank Ltd. v. Hitachi High Techs. Am., Inc., 610 F.3d 1063, 1066 (9th Cir. 2010). We follow a two-part test to determine objectively whether the bankruptcy court abused its discretion.

---

[5] In its Memorandum Opinion, the bankruptcy court ruled that the General Judgment was discharged because it was a debt based on a breach of contract (i.e. for unpaid legal fees). Knappenberger did not appeal that portion of the court's ruling.

United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009). First, we "determine de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested." Id. Second, we examine the bankruptcy court's factual findings under the clearly erroneous standard. Id. at 1262 n.20. We affirm the court's factual findings unless those findings are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" Id. (internal quotation marks omitted). If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in the record, then the bankruptcy court abused its discretion. Id.

## V. DISCUSSION

The discharge of debts for the honest and unfortunate debtor lies at the heart of the Bankruptcy Code's fresh start policy. See Grogan v. Garner, 498 U.S. 279, 287 (1991). The Code however carves out various exceptions to discharge in § 523(a) which "reflect a conclusion on the part of Congress 'that the creditors' interest in recovering full payment of debts in these categories outweigh[s] the debtors' interest in a complete fresh start.'" Id. Nonetheless, given the strong fresh start policy in the Code, exceptions to discharge are "strictly construed against an objecting creditor and in favor of the debtor." Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir. 1992).

Section 523(a)(6) states that a discharge under § 727 does not discharge an individual from any debt — "(6) for willful and

-6-

malicious injury by the debtor to another entity or to the property of another entity." This section applies to debts arising from intentionally inflicted injuries. <u>Carrillo v. Su (In re Su)</u>, 290 F.3d 1140, 1143 (9th Cir. 2002) (citing <u>Kawaauhau v. Geiger</u>, 523 U.S. 57 (1998)). In determining whether a debtor's conduct falls within the scope of the statute, a two-step analysis is required. The first step of the analysis is determining whether there was a "willful" injury, while the second step concerns whether the conduct was "malicious." <u>In re Su</u>, 290 F.3d at 1146-47; and <u>see</u> <u>Barboza v. New Form, Inc. (In re Barboza)</u>, 545 F.3d 702, 711 (9th Cir. 2008) (recent case reinforcing <u>Su</u> and the requirement of courts to apply a separate analysis for each prong of "willful" and "malicious").

For conduct to be willful, a creditor must prove that the debtor had the subjective intent to cause harm or the subjective knowledge that harm was substantially certain to occur. <u>Su</u>, 290 F.3d at 1146. For conduct to be malicious, a creditor must prove that the debtor: (1) committed a wrongful act; (2) done intentionally; (3) which necessarily causes injury; and (4) was done without just cause or excuse. <u>Id.</u> at 1146-47. Knappenberger had the burden of proving these elements by a preponderance of the evidence. <u>Grogan</u>, 498 U.S. at 287. "The burden of showing something by a 'preponderance of the evidence,' . . . 'simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence.'"

-7-

Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 622 (1993).

The gravamen of Knappenberger's argument on appeal is essentially that contempt sanctions are per se nondischargeable. To support his position, Knappenberger relies on three decisions from other circuits: Siemer v. Nangle (In re Nangle), 274 F.3d 481 (8th Cir. 2001), Neufeld v. McDowell (In re McDowell), 415 B.R. 612 (Bankr. S.D. Fla. 2008),[6] and PRP Wine Int'l. v. Allison (In re Allison), 176 B.R. 60 (Bankr. S.D. Fla. 1994). According to Knappenberger, the courts in all three cases held that damages from a contempt order obtained by a creditor as a result of a debtor violating court orders were nondischargeable as a matter of law because such conduct met the "willful and malicious" injury test of § 523(a)(6). He further asserts that in none of the cases did the court require any further analysis to determine if the debtor's conduct met the § 523(a)(6) standards other than the debtor's failure to obey a court order. Finally, Knappenberger argues that injury to the creditor "is assumed" from the damages awarded to the creditor by the state court.

We are not persuaded by Knappenberger's arguments or

---

[6] The bankruptcy court in In re McDowell addressed the nondischargeability of a sanctions award under § 523(a)(7) after the debtor filed a motion for judgment on the pleadings. The bankruptcy court determined that because the sanctions award was not payable to a governmental unit, the debt did not fall within the § 523(a)(7) exception to discharge. The facts and the holding in In re McDowell do not assist Knappenberger's position in this appeal.

-8-

citations to non-binding case law. His argument for a per se rule is plainly contrary to our holding in <u>Suarez v. Barrett (In re Suarez)</u>, 400 B.R. 732 (9th Cir. BAP 2009). In <u>In re Suarez</u>, the Panel considered whether conduct leading to a judgment for contempt of court could be for a willful and malicious injury under § 523(a)(6). In conducting its statutory analysis, the Panel first examined the plain language of § 523(a), observing that § 523(a)(6) "does not make 'contempt' sanctions nondischargeable per se, and neither does any other subpart of section 523(a)." <u>Id.</u> at 737. Because the statutory language did not support a per se rule, the Panel concluded that "whether contempt sanctions are nondischargeable accordingly depends not on whether they are labeled as 'contempt,' but on whether the conduct leading to them was 'willful and malicious.'" <u>Id.</u>

The Panel next considered applicable case law — including <u>In re Nangle</u> and <u>In re Allison</u> — two of the cases upon which Knappenberger now relies. In <u>In re Nangle</u>, the Eighth Circuit declined to decide whether a contempt judgment was per se nondischargeable under § 523(a)(6), while the bankruptcy court in <u>In re Allison</u> held that failure to comply with a court order constitutes willful and malicious conduct as a matter of law within the meaning of § 523(a)(6). Following the Eighth Circuit's lead in <u>In re Nangle</u>, the Panel in <u>In re Suarez</u> also declined to adopt a per se rule and held that a debt for contempt sanctions may be nondischargeable under § 523(a)(6) when the conduct leading to the contempt is willful and

malicious, as required by the holding in In re Su.

The record shows that the bankruptcy court followed and correctly applied the two-step analysis set forth in In re Su.[7] In analyzing the willful requirement, the bankruptcy court concluded that Knappenberger's evidence did not permit an inference that debtor had the subjective intent to cause harm to Knappenberger or that debtor had the subjective knowledge that harm was substantially certain to occur because there was other evidence that supported a contrary conclusion. Specifically, debtor's schedules showed that he was unemployed and had no nonexempt assets to pay the General Judgment. Further, Knappenberger had presented no evidence showing that debtor had the ability to pay the General Judgment at the time it was issued or anytime thereafter. Therefore, debtor's lack of resources to pay the General Judgment raised the probability that debtor did not appear for his judgment debtor exams due to his dire financial circumstances as opposed to his subjective intent to harm Knappenberger. When the evidence gives rise to

---

[7] Although the state court found debtor in "willful" contempt of court, the meaning of "willful" under the Oregon contempt statute (Or. Rev. Stat. 33.015(2)) does not have the same intent requirements as needed for the finding of a willful injury under § 523(a)(6). "[P]roof that a party had knowledge of a valid court order and failed to comply with that order" establishes a finding of "willfulness" under Or. Rev. Stat. 33.015(2). See In re Conduct of Chase, 121 P.3d 1160, 1163 (Or. 2005)(en banc)(citing State ex rel Mikkelsen v. Hill, 847 P.2d 402 (Or. 1993)). The Oregon Supreme Court went on to state that this standard did not require a conscious purpose or objective to accomplish a particular result. Id. Therefore, the bankruptcy court properly made an independent inquiry into whether debtor's conduct rose to the § 523(a)(6) willful injury standard.

competing interpretations, each plausible, "the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985).

At oral argument, Knappenberger pointed to debtor's December 2009 letter as evidence of debtor's subjective intent to harm Knappenberger. In that letter, debtor stated that he intended to string Knappenberger along so that Knappenberger received payment at debtor's convenience. However, at the same time, debtor offered $700 to settle the General Judgment, a settlement which Knappenberger refused. The bankruptcy court placed no significance on debtor's statements in the letter other than observing that the language of the letter was colorful and tended to indicate that relations between the parties were anything but cordial as Knappenberger pursued his collection efforts against debtor in state court. The court also observed that the letter was essentially cumulative in characterizing the relationship between the parties as a dogged debt collector pursuing a bitter and impecunious debtor, feeling cornered. The bankruptcy court's interpretation of the letter was certainly plausible in light of the record as a whole. Accordingly, the bankruptcy court did not err in finding that Knappenberger failed to meet his burden of proof on the willful element.

In analyzing the malicious requirement, the court found the same facts relating to debtor's financial condition showed that his conduct did not necessarily cause injury to Knappenberger. In other words, without the resources to pay the General

-11-

Judgment prior to the issuance of the orders for the judgment debtor exams, debtor's failure to appear at those exams could not have caused Knappenberger injury beyond the dischargeable debt contained in the General Judgment. That there may be other plausible interpretations of the evidence is not enough to overturn the bankruptcy court's findings. Therefore, the bankruptcy court did not err in finding that Knappenberger failed to meet his burden of proof on the malicious element.

The bankruptcy court also did not abuse its discretion by denying Knappenberger's motion to amend the dismissal judgment. Knappenberger did not present newly discovered evidence, demonstrate clear error, or show an intervening change in controlling law. See 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999) (setting forth grounds for reconsideration under Fed. R. Civ. P. 59(e)); see also Rule 9023 (incorporating Fed. R. Civ. P. 59(e) in bankruptcy proceedings).

## VI. CONCLUSION

For the reasons stated, we AFFIRM.